822 A.2d 615 (2003)
360 N.J. Super. 214
Moustafa Daktory ALY, Ibrahim Ibrahim and Amad Abdou, Plaintiffs Respondents,
v.
E.S. SUTTON REALTY, 2823-34 Kennedy Boulevard Associates, Defendants,
and
Insider Realty Corp., Defendant-Appellant.
Alma Realty Co., Agent for Arcor Fair Realty L.L.C., Plaintiff-Appellant,
v.
Robert Harper, Defendant-Respondent,
and
Occupants Residing in Unit 201, 270 Harrison Avenue, Jersey City, New Jersey, Defendants.
Donna Hughen, Plaintiff-Respondent,
v.
50 Journal Square Arcade, Inc., Defendant-Appellant.
Robert N. Leone, Plaintiff-Respondent,
v.
Sonja Fesenmaier d/b/a Schuyler Garden Apartments, Defendant-Appellant.
Luis Rodriguez, Plaintiff-Respondent,
v.
Parc Harrison Condo Association, 429 Fairmont Court Condo Association a/k/a Fairmount Court Condo, Alma Realty Management Company, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued February 25, 2003.
Decided May 14, 2003.
*616 Stephen L. Hopkins, Livingston, argued the cause for appellants Insider Realty Corp.; Alma Realty Co., Agent for Harcor Fair Realty, L.L.C.; 50 Journal Square Arcade, Inc.; Sonja Fesenmaier d/b/a Schuyler Garden Apartments (Braff, Harris & Sukoneck, attorneys; Mr. Hopkins and Andrew M. Lusskin, on the brief).
Stephen L. Hopkins, Livingston, argued the cause for appellants Parc Harrison Condo Assoc.; 429 Fairmont Court Condo *617 Assoc. a/k/a Fairmont Court Condo Assoc.; Alma Realty Management Co. (Braff, Harris & Sukoneck, attorneys; Mr. Hopkins and Janice Bierman, on the brief).
Gregory G. Diebold argued the cause for respondent Robert Harper (Northeast New Jersey Legal Services, Inc. attorneys; Mr. Diebold, on the brief).
Richard R. Spencer, Jr. argued the cause for amicus curiae New Jersey Property-Liability Insurance Guaranty Association (Bressler, Amery & Ross, attorneys; Mr. Spencer, on the brief).
Emerald Erickson Kuepper, Deputy Attorney General, argued the cause for amicus curiae New Jersey Commissioner of Banking and Insurance (Peter C. Harvey, Acting Attorney General, attorney; Michael Hass, Assistant Attorney General, of counsel; Ms. Kuepper, on the brief).
Before Judges PRESSLER, CIANCIA and HOENS.
The opinion of the court was delivered by HOENS, J.A.D.
We granted leave to appeal in these several cases to address the effect to be given to a series of orders of the Commonwealth Court of Pennsylvania staying proceedings against Legion Insurance Co., a Pennsylvania insurance company now in rehabilitation proceedings in that state and staying proceedings against Legion's insureds as well.
Legion Insurance Co. (Legion) is a Pennsylvania insurer which offers commercial general liability insurance coverages (CGL policies) in the State of New Jersey. The parties in these cases include New Jersey business entities insured by Legion CGL policies and persons who allege that they were injured at the premises covered by the policies.
By order dated March 28, 2002, the Commonwealth Court of Pennsylvania granted the petition of Diane Koken, the Insurance Commissioner of the Commonwealth, to formally place Legion into rehabilitation in accordance with the laws of Pennsylvania, 40 P.S. §§ 221.1-221.63. Koken v. Legion Ins. Co., Docket No. 183 M.D.2002 (Pa.Commw.Ct. Mar. 28, 2002). That order included the following directive in paragraph 24:
a. All court actions, arbitrations and mediations currently or hereafter pending against Legion in the Commonwealth of Pennsylvania or elsewhere are hereby stayed.
b. All court actions, arbitrations and mediations currently or hereafter pending against an insured of Legion in the Commonwealth of Pennsylvania or elsewhere are stayed for ninety (90) days from the effective date of this Order or such additional time as the Rehabilitator may request.
By its terms, therefore, the Pennsylvania order purported to stay all proceedings involving Legion not only in that state, but in every other state, including New Jersey. The ninety-day stay embodied in the initial order expired on June 28, 2002. On that date, the Commonwealth Court issued a supplemental order granting the emergency petition of the Rehabilitator and extending the stay for a further period of ninety days, or until September 27, 2002.
In August 2002, the Commissioner, in her capacity as the Rehabilitator for Legion, petitioned the Pennsylvania court for leave to commence liquidation proceedings, apparently based upon her determination that Legion could not be successfully restored to financial health. That petition was opposed. On September 25, 2002, therefore, the Pennsylvania court entered a further order which scheduled a prehearing conference in connection with a hearing *618 on the petition for the liquidation of Legion for October 4, 2002 and which continued the previously granted stay of all proceedings in Pennsylvania and elsewhere until December 1, 2002. That court issued another order on November 22, 2002, scheduling further proceedings on the petition for liquidation and extending the stay of all proceedings to December 31, 2002. The court entered an additional order on December 27, 2002 which continued the stay until January 31, 2003. At oral argument, we were advised that the stay had been further extended to March 28, 2003 and that the Pennsylvania judge had re-opened the liquidation proceeding to receive further testimony and evidence. We were thereafter advised that the court issued further orders extending the stay until April 30, 2003 and, most recently, until May 31, 2003.
While the procedural history of each of the matters now before us varies somewhat, for purposes of this decision, we regard the procedural posture of the Aly, Hughen, Leone and Rodriquez matters as typical and rely upon our understanding of that history for illustrative purposes. In those matters, applications on behalf of Legion for a stay were made and granted in respect of the first two Pennsylvania stay orders. As a result, the party insured by Legion, in each case the defendant, was successful in securing a stay of all proceedings in each of those cases, first to June 28, 2002 and then until September 27, 2002. Legion's applications to further extend the stay to December 1, 2002, however, were denied by the trial court, for the reasons expressed in a written decision.[1] We granted leave to appeal and a stay pending appeal in these and all similar applications because of the public importance of the issue now before us. For that reason as well we invited the participation of the New Jersey Property-Liability Insurance Guaranty Association (PLIGA) and the New Jersey Commissioner of Banking and Insurance (Commissioner), both of whom filed briefs and participated in oral argument.
Legion, PLIGA and the Commissioner assert that the order of the Pennsylvania court is entitled to full faith and credit on both constitutional and statutory grounds[2] requiring it to be honored here without question. In his written opinion, the trial court judge rejected the argument that the orders of the Pennsylvania court are entitled to full faith and credit and held that they are entitled only to deference as a matter of comity, an analysis with which we concur.
While the language used in the full faith and credit clause, U.S. Const. art. IV. § 1, as well as the implementing language of the applicable federal statute, 28 U.S.C.A. § 1738 (1966), is broad, our Supreme Court has not so interpreted it. See City of Philadelphia v. Austin, 86 N.J. 55, 58, 429 A.2d 568 (1981). Notwithstanding the apparent breadth of its literal language, our courts have consistently recognized that the clause admits of significant limitations. Among these is the requirement of finality through entry of a *619 judgment by the court of a sister state. Ibid. (citing Milwaukee County v. M.E. White Co., 296 U.S. 268, 276-77, 56 S.Ct. 229, 233-34, 80 L.Ed. 220, 227-28 (1935)); see, e.g., The Antelope, 23 U.S. 66, 123 (10 Wheat.), 66, 23 U.S. 66, 6 L.Ed. 268 (1825)("courts of no country execute the penal laws of another"); Sistare v. Sistare, 218 U.S. 1, 30 S.Ct. 682, 54 L. Ed. 905 (1910), (declining to apply full faith and credit to alimony awards); Alaska Packers Ass'n v. Industrial Accident Comm., 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935) (refusing to apply full faith and credit to workers' compensation awards); W.S. Frey Co. v. Heath, 158 N.J. 321, 328, 729 A.2d 1037 (1999) (refusing to accord full faith and credit to judgment entered in circumstances contrary to our notions of due process). Because not every act of every court is one which is entitled to full faith and credit and because the order of the Pennsylvania Court is interlocutory, we concur with the trial judge in his rejection of the full faith and credit argument.
We note, as well, that this determination is in accord with the decisions of the overwhelming number of courts in other jurisdictions which have considered this issue. E.g., Mantero-Atienza v. Salvador, 807 So.2d 163, 164 (Fla.Dist.Ct.App.2002) (honoring stay issued in New York proceedings for insurance rehabilitation); Isermann v. MBL Life Assur. Corp., 231 Wis.2d 136, 149, 605 N.W.2d 210, 215 (Wis.Ct.App. 1999) (applying comity analysis); In re Noble Trucking Co., 675 So.2d 356, 359 (Ala.1996) (declining to overturn discretionary decision of trial court refusing to honor stay); Hoiness-LaBar Ins. v. Julien Constr. Co., 743 P.2d 1262, 1268-69 (Wyo.1987).
The corollary doctrine respecting the effect to be given to the decision of a sister state which falls short of the standard required for invoking full faith and credit is that of comity. As the United States Supreme Court has described the doctrine:
[c]omity is not a rule of law, but one of practice, convenience, and expediency.... Comity persuades; but it does not command.... It demands of no one that he shall abdicate his individual judgment, but only that deference shall be paid to the judgments of other co-ordinate tribunals.
[Mast, Foos & Co. v. Stover Mfg. Co., 177 U.S. 485, 488-89, 20 S.Ct. 708, 710, 44 L.Ed. 856, 858 (1900).]
"Comity is the basis for voluntary enforcement or recognition by one state of the judicial proceedings of a sister state." City of Philadelphia v. Austin, supra, 86 N.J. at 63-64, 429 A.2d 568; see Stultz v. Stultz, 15 N.J. 315, 319-20, 104 A.2d 656 (1954); O'Loughlin v. O'Loughlin, 6 N.J. 170, 179, 78 A.2d 64 (1951). Comity, unlike full faith and credit, is not a binding obligation on the forum state, but a courtesy voluntarily extended to another state for reasons of "practice, convenience and expediency." Mast, Foos & Co. v. Stover Mfg. Co., supra, 177 U.S. at 488, 20 S.Ct. at 710, 44 L.Ed. at 858; Polyckronos v. Polyckronos, 17 N.J. Misc. 250, 255, 8 A.2d 265 (Ch.1939). Deference is not to be offered, however, when it would contravene the public or judicial policy of the forum state. Thus, application of comity involves an examination by the court of both the public policy of the forum state and the impact on that policy of enforcing the order issued in the foreign proceeding.
The competing policy considerations raised by the parties to these disputes and by the amici curiae are broad and diverse. Legion, the company now in rehabilitation in Pennsylvania and the moving party, argues that reciprocity among states that have enacted legislation similar to the Uniform Insurers Liquidation Act, adopted in *620 New Jersey as N.J.S.A. 17:30C-1 et seq., is critical to the orderly rehabilitation of financially troubled insurers. It contends that a refusal of the courts in one state to honor the stay of litigation issued by the court of the state where the insurer is domiciled interferes with the underlying policy goals of that statute and threatens to adversely interfere with the process of rehabilitation of the insurer to the detriment of its policyholders nationwide. More to the point, Legion asserts that the practical effect of a refusal here to honor the stay will be that Legion will, in obedience to the order of the Pennsylvania court, instruct its attorneys to withdraw from representation of its insureds in all pending matters in New Jersey, notwithstanding the language of its policies concerning duty to defend. It therefore asserts that, as a practical matter, all of Legion's New Jersey policyholders will be left to defend lawsuits here without counsel provided by the insurer and will be left to answer individually from their own assets for any judgments as may be entered. Legion asserts that any judgments entered in matters here in the face of the Pennsylvania stay will not bind it nor will any such judgments be honored as against Legion's assets absent further litigation.
The Commissioner, appearing as amicus curiae at our invitation, raises similar concerns. The Commissioner argues that reciprocity is of paramount importance in the enforcement of the Uniform Insurers Liquidation Act, N.J.S.A. 17:30C-1 et seq. The stay imposed during the period of rehabilitation or, if ultimately that process is unsuccessful, any further stay entered for purposes of liquidation[3], is designed to protect the interests of policyholders, creditors of the insurer and the public in general by affording the Rehabilitator both the time and the tools needed to efficiently utilize the available resources of the insurer to restore it to financial health. As a practical matter, the Commissioner warns that our failure to honor the stay for rehabilitation would potentially result in "a chaotic rush on the assets of an insurer just at the time that the Rehabilitator is trying to grapple with understanding the complete financial picture of the company." Moreover, the Commissioner voices a concern that our refusal to honor the Pennsylvania stay would be shortsighted, arguing that were we to now do so, the courts of other states might in the future do likewise and refuse to honor a similar stay order issued by our courts should one of our domestic insurers face rehabilitation.
PLIGA, also invited to participate as amicus curiae, echoes the concerns of the Commissioner, contending that a refusal to honor the stay entered by our sister state as a part of its efforts to rehabilitate its domestic insurer will unnecessarily interfere with the ability of that state to restore that insurer to health. Moreover, PLIGA points out that the actions of the Rehabilitator are subject to the control and supervision of the Pennsylvania court and contends that our deference, therefore, is to the court of our sister state charged with the oversight of the rehabilitation process. PLIGA contends that a refusal to honor the stay will inevitably result in a drain on the insurer's assets by interference with the process of rehabilitation in a way that can only have an adverse impact on that *621 process to the detriment of the insurer, the policyholders, the creditors and the courts. Furthermore, PLIGA argues that refusing to honor the stay will inevitably result in a lack of uniformity in the courts within our own state, as some trial judges will elect to honor the stay while others, exercising their discretion within the context of the principles of comity, will refuse to do so. PLIGA warns that these disparate results even within our own state are inconsistent with the underlying policy goals of the Uniform Act. It thus urges this court to adopt a single uniform rule to govern all of the trial courts and further urges that we adopt the rule of total deference to the continued stay order from Pennsylvania regardless of how long that process may take.
The only party to these appeals taking a contrary view is Robert Harper, the defendant-counterclaimant in the Alma Realty Co. matter. Harper, when faced with eviction by Alma, his landlord, a Legion insured, counterclaimed for damages arising out of a fire at the premises. Harper argues that our courts should be wary of restricting access to the courts merely out of deference to the stay order entered by the court of a sister state. He urges us to consider that a continued delay will inevitably have adverse effects on the ability of injured persons to obtain redress for their injuries. He argues that, as time passes during the pendency of the stay, witnesses may become unavailable, memories may fade, and evidence may be lost. He therefore urges us not to overlook the adverse effects on innocent injured parties that continued deference to the stay order will create. Harper argues that the individual trial judges are in the best position to evaluate the specifics of each particular case and to ensure that justice is equally available to our citizens and urges us to affirm the trial court's exercise of its discretion to refuse to continue to honor the stay. No other plaintiff or claimant participated in the briefing or the oral argument either in opposition to or in support of the continued deference to the stay order.
The trial judge in denying the application for the third extension of the stay expressed the legitimate institutional concerns of the judiciary at the trial level. He pointed out that the Legion rehabilitation began in Pennsylvania with an order entered March 28, 2002. That order, which granted the request of the Pennsylvania Commissioner of Insurance to place Legion into rehabilitation, included a stay which was honored by all of the trial judges in New Jersey, and which was honored each time it was extended until the order refusing to further extend it now before us in this appeal. He noted that the Uniform Insurers Liquidation Act, N.J.S.A. 17:30C-1 et seq., does not apply to insurers in rehabilitation at all, but is reserved to situations where an insurer is being liquidated.
He further noted that because the stay orders were entered by a sister state without any notice to individuals here in New Jersey whose interests are directly affected by those orders, they fall short of our notions of due process, thus entitling them to no deference. He further expressed the view that deference to orders of a sister court extending stays for rehabilitation may simply be delaying the inevitable slide of an insurer into liquidation, a delay that inures to the benefit of neither the insurer, the insureds nor the claimants.
Finally, as an added matter of institutional concern, we are aware of the significant adverse effect on court calendars around the state of an increasing number of matters where progress is, as a practical matter, halted by an order from a judge in a sister state without input from our courts or our citizens. We are not unmindful *622 of the growing impact that this group of cases, now numbering in the hundreds, has upon the orderly movement of litigation through discovery and trial and, consequently,the impact of this stay on the calendars of the judges around the state charged with the efficient administration of justice. Nevertheless, we are compelled to conclude that our paramount concerns are those which bear more directly upon the rights of the parties seeking access to the courts and those that arise from our reluctance to interfere with the administration of the rehabilitation or liquidation process as reflected in the Uniform Act. Taken together, our concerns for uniformity and for avoiding the rush to the courthouse which would result from a general lifting of the stay outweigh the institutional concerns of the court system respecting swift adjudication of matters, at least in general.
Against this backdrop of factual and practical concerns and considerations, we turn to the matter at hand. In addressing the question of the limits on the exercise of comity by our courts in these circumstances, we note that the Pennsylvania Commissioner of Insurance initially petitioned to be appointed as the Rehabilitator for Legion, which resulted in the first order imposing the ninety-day stay for rehabilitation. We note, however, that following a rather brief period, the Commissioner determined that Legion simply could not be rehabilitated[4] and moved in August 2002 in the Pennsylvania court for an order forcing Legion into liquidation. The significance of that determination is that all of the subsequent proceedings in Pennsylvania and all of the subsequent orders extending the original March 28, 2002 stay are related to the ongoing dispute about whether Legion can or should be rehabilitated at all. It also means, as a practical matter, however, that the Commissioner in Pennsylvania has already determined that Legion is in a sufficiently precarious state that liquidation, rather than rehabilitation, is appropriate. A proceeding in liquidation, of course, would in fact empower PLIGA under the plain terms of the Guaranty Act, N.J.S.A. 17:30A-1 et seq., to step in and act. While that change in Legion's status would initially result in a statutory 120-day stay under the Guaranty Act, N.J.S.A. 17:30A-18, it would also bring a measure of closure to the now pending cases as it would signal the commencement of the liquidation process with its attendant resolution of pending matters statewide.
The principles of comity compel us to conclude that absolute deference to the rehabilitation stay order for a time adequate to serve the needs of rehabilitation is ordinarily mandated. We therefore hold that comity demands deference to an initial stay order. The question, then, is how long thereafter our courts must defer during the pendency of rehabilitation proceedings in a sister state. To begin with, we think it plain that a broad grant of discretion to our many individual trial judges to evaluate applications for extended stays in accordance with their individual views of comity would be inappropriate and unwise. Rather, a uniform and therefore state-wide approach to this issue is warranted. A state-wide approach must be one which takes into consideration the significant competing concerns expressed by the parties and the amici curiae. We conclude that the most reasonable approach is one which requires our courts to *623 honor the stay but which creates an appropriate framework for permitting exceptions to the stay based on an individualized demonstration of hardship.
We place considerable emphasis on the arguments of the Commissioner and PLIGA about the potential adverse effects here and nationwide that a refusal to honor the stay in general would cause. We place significant emphasis as well, however, on the argument that innocent parties who seek redress for injury should not be made to wait needlessly or endlessly for their day in court. But we are also mindful of the very real possibility that should we countenance a general refusal to honor the stay, it might trigger a wholesale rush to the courthouse which would not result in payment of just claims but would instead leave insured parties without either defense or coverage. While it could be argued that granting permission for such a general refusal to honor the stay might have the salutory effect of forcing Legion into liquidation, we question whether that would in fact be the outcome and we further question whether, consistent with the Uniform Act, it is our role to effectively make that decision in place of the judge in the home state of the troubled insurer.
The record before us plainly requires that we consider the situation, as unusual as it may be, where the rehabilitation stay order is repeatedly extended, as has been the case of the stay order now before us. We consider in that circumstance that as time passes the concerns of the litigants in any particular matter may become paramount and must at some point be given more weight than the other concerns expressed. It is not without significance to us, in this regard, that of all of the matters included in this appeal, and all of the others of which we are aware and as to which we have imposed stays, only one litigant seeking damages from a Legion insured raised a concern about the effect of the continuation of a stay. The reasons are obvious, for a litigant might well believe that forcing a matter forward while Legion remains in rehabilitation might result in a pyrrhic victory, with a trial of a matter that might otherwise have been settled or a trial resulting in a judgment that will never be honored. That being true, we perceive that most of the litigants are willing to abide the outcome of the proceedings in Pennsylvania and as a result are not in any sense being deprived of their right of access to our courts at all. Rather, there are only a very few litigants who fall into a category that we would regard as sufficiently in need of immediate access that they should be heard.
We note that the stay order itself does not foreclose an avenue of redress in an appropriate case, in spite of the apparently broad and generally-applicable language of the stay. The original order and every subsequent order vests the Commissioner in Pennsylvania, in her capacity as the Legion Rehabilitator, with broad discretion to act in particular cases. By virtue of that language it is apparent that the Pennsylvania courts will honor the Commissioner's exercise of that discretion. The initial order included the following paragraphs:
20. The Rehabilitator may, in her discretion, pay claims for losses, in whole or in part, under policies and contracts of insurance and loss adjustment expenses as identified in Section 544(b) of the Insurance Department Act, supra, 40 P.S. § 221.44(b), provided, however, that the Rehabilitator shall not have the discretion to pay, and may not pay, bad faith claims or claims for extra-contractual charges or damages.
21. No payments of any type shall be made to any claimants of Legion as identified in Section 544(c) through (i) of the Insurance Department Act of 1921, *624 supra, 40 P.S. § 221.44(c) through (i), except in the discretion of the Rehabilitator.
As a practical matter, this aspect of the order makes available to litigants in Pennsylvania an avenue of redress not similarly available to our citizens. We understand this language to mean that the Pennsylvania Commissioner of Insurance retains broad discretion, as the Rehabilitator for Legion, to permit Legion to appear, to defend, to settle and to pay out claims or judgments in pending matters. There is no evidence in the record before us as to the Commissioner's interpretation of the scope of these clauses[5] and no evidence concerning what, if any, action the Commissioner has taken pursuant to these clauses. Nevertheless, we presume it to mean, at a minimum, that the Commissioner will entertain applications for relief from the stay in appropriate cases, which we think must surely include cases of individual hardship, however such circumstances may be defined.
While it might be said that the same avenue, regardless of its technical definition, is equally available to any of our citizens should they seek to apply, plainly it is not, for it would at a minimum require our citizens to commence a new proceeding in a foreign state to assert a right to be included within that discretionary class. Without engaging in an extended discussion of the possibility that this scheme is offensive to the relevant constitutional principles of equal protection, we think that the permission granted to the Pennsylvania Commissioner to determine what claims to pay and what litigation to fund creates an avenue of redress for some litigants not equally available to the citizens of our state. It is for those few litigants, therefore, who seek immediate access to the courts, that the permissive language of the stay order and its disparate treatment of our citizens compels us to act.
We therefore hold that comity demands that our trial courts honor the initial stay for rehabilitation and that they continue to honor the extensions of that stay in all cases in which the litigants themselves do not affirmatively seek relief from the stay. For those cases in which any of the litigants seeks relief from the stay, we interpret the order's grant of discretion to the Pennsylvania Commissioner as necessarily creating an equivalent right of access for our own citizens through our own courts. We interpret that language to mean, however, that the application for relief must proceed in the nature of an application based upon a demonstration of individual hardship. We expect as well, in light of our general deference to the stay, that the Commissioner will accord reciprocal deference to orders arising out of findings of individualized hardship and will therefore enforce or effectuate those orders.
We note that our Department of Insurance, implementing the will of the Legislature, has previously devised, in somewhat similar circumstances, a definition of hardship. In the context of the re-organization of the Joint Underwriting Association (JUA) as a part of the New Jersey Fair Automobile Insurance Reform Act of 1990, N.J.S.A. 17:33B-1 et seq., and later as a part of the creation of the Market Transition Facility (MTF), insurance *625 payments of judgments and settlements in automobile accident cases were deferred. N.J.S.A. 17:33B-3b(2); see Ainsworth v. State Farm Mut. Ins. Co., 284 N.J.Super. 117, 123-24, 663 A.2d 1365 (App.Div.1995), certif. denied, 143 N.J. 328 (1996). The implementing regulations also recognized, however, that some claimants should not be required to await payment and created a mechanism for demonstration of hardship sufficient to permit immediate release of funds. See N.J.A.C. 11:3-2A.5(a) (repealed 1996); N.J.A.C. 11:3-2B.6 (repealed 2001). While the specifics of that compensation system are not relevant to this discussion, the definition of hardship bears repeating. The JUA regulation defined the hardship circumstances which would permit application for immediate payment as those where the claimant:
1. Demonstrates, through a written statement and sufficient supporting documentation, the existence of an extreme and immediate financial emergency; and
2. In which the applicant attests that the emergency cannot be resolved through use of any other reasonably available financial resources. "Reasonably available financial resources" includes, but is not limited to, resources such as reimbursement or compensation through insurance coverage, reasonable liquidation of assets to the extent that liquidation would not cause further economic hardship, or borrowing from commercial sources on reasonable commercial terms. [N.J.A.C. 11:3-2A.5(a) (repealed 1996).]
The regulation further provided a series of examples of grounds deemed to be an acceptable demonstration of hardship for this purpose:
(b) Some examples which may constitute acceptable grounds for a hardship exemption are as follows:
1. The claimant, spouse or dependent has incurred substantial medical expenses (over $5,000) not related to the subject ... accident and not covered by insurance....
2. The claimant, spouse or dependent cannot pay for essential food and shelter. For this exemption to apply, the applicant, spouse or dependent must face imminent eviction or foreclosure from their principal residence....
3. The claimant, spouse or dependent faces immediate removal from a nursing home, hospital or other medical care institution due to the inability to pay, although continued medical care is prescribed by medical health care providers and not related to the subject motor vehicle accident....
4. The applicant cannot pay funeral expenses of the claimant, spouse or dependent and the death is not related to the subject motor vehicle accident....
5. Such other financial emergency or situations of an unusual or emergent nature which may be deemed to be appropriate based upon information provided. [N.J.A.C. 11.3-2A.5(b) (repealed 1996).]
The regulations adopted in connection with deferred payments from the MTF were virtually identical. See N.J.A.C. 11.3-2B.6 (repealed 2001). These definitions of hardship were adopted as a means to determine which specific claimants should not be required to wait for payment of claims due to be paid as a result of settlement or judgment. We regard them as appropriate guidance to be applied to determine hardship here as well.
We add, however, that there are other circumstances which would constitute hardship in these cases beyond those envisioned by these regulations. Because here we also have litigants whose progress through the courts is halted prior to trial, *626 and thus prior to settlement or judgment, we can envision other matters of true hardship. We include, for example, parties who can demonstrate that key evidence will be lost and that the evidence is in need of preservation, or that a critical witness is so elderly or infirm that preserving his or her testimony for use at trial is imperative. In such cases, a determination of hardship might be appropriately considered to require only a modest and temporary lifting of the stay for the purpose of preserving evidence. In such a case, the appropriate relief would be limited to a directive that Legion fund the cost of or participate in the necessary discovery as a way to avoid the hardship.
We therefore conclude that, in recognition of the fact that there may be some individual litigants for whom delay beyond the deference to the first order would create true hardship, and in further recognition of the fact that in the absence of a mechanism which permits those litigants redress through our courts without the need to attempt to resort to the courts of Pennsylvania, deference to the stay might not pass constitutional muster, there must be a mechanism by which an individual litigant who seeks to be heard notwithstanding the continuation of the stay should be permitted to do so. In so finding, we conclude that such litigants must be permitted an avenue to raise claims of hardship and we here adopt the foregoing definitions of circumstances sufficient to demonstrate hardship as an expression of our view of the appropriate hardship analysis.
The granting of such an application, however, must not be routine but rather must be based on a finding of true hardship. Moreover, because of our concern for the adverse effects here and elsewhere that would arise were such applications to be heard by multiple different judges, we think it appropriate that any applications for lifting the stay on grounds of hardship in any individual case should be entertained only by the civil presiding judges in each of the vicinages.[6] We anticipate that the number of applications will be few, and that they can be appropriately managed on a vicinage by vicinage basis.
Finally, we expect that, like our deference to the order of our sister court respecting the stay in general, the decisions of our civil presiding judges to lift the stay in particular cases based upon an appropriate demonstration of true hardship will be accorded recognition consistent with comity by the Pennsylvania Rehabilitator. We anticipate, therefore, consistent with comity, that such orders as are entered directing Legion to appear and defend will be honored and that the judgments, if any, that result will be afforded the full faith and credit to which the constitution entitles them.
In summary, then, an initial stay order in rehabilitation is to be honored and its extensions are to be accorded continued deference excepting that individual claimants shall be permitted, by application to the civil presiding judge of the vicinage where his or her matter is pending, to demonstrate that the continued adherence to the stay has caused true hardship, as we have defined it, which applications, we assume, will be sparingly granted.
*627 The orders of the trial judges denying stays which are appealed from are reversed.
NOTES
[1] While it appears that in each of these matters, the discovery end date had passed prior to the issuance of the original Pennsylvania stay order and that all of them were therefore ready for trial, see R. 4:24-1, at oral argument we were advised that in other matters involving Legion, stays were entered prior to the completion of discovery, which remains incomplete in those cases.
[2] While Legion largely conceded at oral argument that the order is not in fact entitled to full faith and credit, because this argument was made to and decided by the trial judge, and because of the likelihood that a similar argument will be pressed in the future, we briefly address it.
[3] We note that, in the event that the Pennsylvania Rehabilitator succeeds in its petition to declare Legion insolvent and if the Commissioner is therefore permitted to proceed with a liquidation of Legion, the statutory scheme of the New Jersey Property-Liability Insurance Guaranty Association Act, N.J.S.A. 17:30A-1 et seq., will apply. In that circumstance, PLIGA would, in essence, step into the shoes of the insolvent insurer and would be entitled at a minimum to a further 120-day stay by statute. N.J.S.A. 17:30A-18.
[4] All parties agree that the procedural circumstances of this matter are unusual and that ordinarily rehabilitation proceedings are neither as protracted nor as complex as these. It is, however, the unusual length of the stay that requires us to act.
[5] The statutory references in the order do not specifically define groups of claimants or categories for payment during the period of rehabilitation. Nor do they create any guidelines for the Pennsylvania Commissioner's exercise of discretion. In fact, the cited sections are part of the Pennsylvania Insurance Liquidation Act, 40 P.S. § 221.1 to .63, and technically give priorities to classes of claimants in insolvency only.
[6] In so directing, we are mindful of the utilization of a centralized judge for the purpose of addressing an omnibus stay sought by PLIGA in connection with the liquidation of other insurers. Based on the relatively limited number of Legion cases now pending, however, we decline PLIGA's suggestion that we express a view on the need for or the usefulness of such a mechanism. That is a matter of judicial administration that can be addressed at a later time if necessary.