880 A.2d 451

SCOTT HALL AND LORA HALL, PLAINTIFFS–APPELLANTS, v.
MICHAEL BELLO INSURANCE AGENCY, INC., DEFENDANT,
THIRD–PARTY PLAINTIFF–RESPONDENT, AND WILL
FRASSE, DEFENDANT, THIRD–PARTY PLAINTIFF, v. HIGH-
LANDS INSURANCE COMPANY, DEFENDANT, THIRD–PAR-
TY DEFENDANT–RESPONDENT, AND CHASE MANHATTAN
MORTGAGE CORPORATION, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued February 16, 2005—Decided June 13, 2005.

Before Judges WEFING, FALL and PAYNE.

*Gregory K. Mueller and Allan Maitlin* argued the cause for appellants (*Lebson & Mueller and Sachs Maitlin Fleming Greene & Mullen* attorneys; *Mr. Mueller* on the brief).

*Michael B. Oropollo* argued the cause for respondent Highlands Insurance Company (*Harwood Lloyd* attorneys; *Mr. Oropollo* of counsel and on the brief, *Peter E. Mueller and Paul E. Kiel* on the brief).

*David R. Cosgrove* argued the cause for respondent Michael Bello Insurance Company (*Stevens & Schwab* attorneys; *Mr. Cosgrove* on the letter brief).

*Leon B. Piechta* appeared for defendant Will Frasse (*O'Donnell & Piechta* attorneys).

The opinion of the court was delivered by

PAYNE, J.A.D.

Plaintiffs Scott and Lora Hall owned a home in Mountain Lakes that, in May 2002, sustained fire damage. They made a claim through their insurance broker, the Michael Bello Insurance

Agency, but learned that homeowners insurance coverage bound and thought to have been placed by the Bello Agency with Highlands Insurance Company allegedly had never become effective because Highlands claimed it had never received the insurance application and policy premium payment. Additionally Highlands asserted that the binder issued by the Bello Agency to the Halls was ineffective because the Agency had exceeded the monetary limits of its binding authority under its agency agreement with Highlands.[1] Suit was accordingly filed by the Halls against the Bello Agency, the agent writing the coverage, Will Frasse, and Chase Manhattan Mortgage Corporation, which they alleged, negligently failed to notify them that there was no hazard insurance in force that covered their mortgaged home and its contents. Thereafter, on December 2, 2002, the Bello Agency and Frasse filed a third-party complaint against Highlands, and Highlands was made a direct defendant by the Halls in an amended complaint filed on January 14, 2003.

However, in accordance with the request of the State of Texas, by order dated November 6, 2003 and entered pursuant to *Tex. Ins.Code Ann.* art. 21.28, Highlands, a Texas domiciliary, was placed in receivership by the District Court of Travis County, Texas,[2] the Commissioner of Insurance of the State of Texas was appointed Receiver,[3] and a permanent injunction was imposed on

---

[1] The Bello Agency's binding authority on policies of the sort the Halls allegedly procured was $350,000. Coverage bound by Bello Agency employee Will Frasse consisted of $380,000 for the dwelling, $38,000 for other structures, $226,000 for personal property, and $76,000 for loss of use, for a total of $720,000.

[2] The order contained a finding of jurisdiction by the court over the parties (the State of Texas and Highlands) and the subject matter, a legal principle confirmed by the United States Supreme Court in *Underwriters Natn'l Assur. Co. v. N.C. Life and Accident and Health Ins. Guaranty Ass'n,* 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982).

[3] The Commissioner appointed Prime TEMPUS, Inc., a Texas corporation, as Special Deputy Receiver with powers and duties identical to those of the Receiver. *Texas Ins.Code Ann.* art. 21.28 § 2(a).

actions contrary to the Receiver's direction. Among other things, the November 6 order barred policyholders and claimants asserting claims or causes of action against Highlands from "[m]aking any claim, charge or offset, or commencing or prosecuting any action, appeal, or arbitration, including administrative proceedings, or obtaining any preference, judgment, attachment, garnishment or other lien, or making any levy against" Highlands, Highland's property or the Receiver except as permitted by *Tex. Ins.Code Ann.* art. 21.28.

The Texas court's order was filed by New Jersey counsel for Prime TEMPUS, Inc., the Special Deputy Receiver for Highlands, in the Superior Court of New Jersey on April 1, 2004 pursuant to the Uniform Enforcement of Foreign Judgments Act (UEFJA), *N.J.S.A.* 2A:49A–25 to –33. *See also Tex. Civ. Prac. & Rem.Code Ann.* art. 35.001 to .008. Highlands, relying on the Texas order, thereupon moved for a stay of the actions against it asserted in the Hall matter, and its motion was granted. However, in accordance with the procedures that we set forth in *Aly v. E.S. Sutton Realty*, 360 *N.J.Super.* 214, 230–233, 822 *A.2d* 615 (App.Div.2003), the judge authorized the Halls to move before the Presiding Judge of the Civil Part to vacate the stay on grounds of hardship. The Halls sought such relief, but it was denied by the court, which found that the Halls had not demonstrated hardship sufficient to warrant that extraordinary remedy. The Halls then moved before us for leave to appeal, which we granted.

On appeal, the Halls present the following arguments:

POINT I

THE STAY ORDER SHOULD BE VACATED TO AVOID THE POSSIBILITY OF INCONSISTENT VERDICTS, TO AVOID A WASTE OF JUDICIAL RESOURCES AND IN THE INTERESTS OF FAIRNESS.

POINT II

NEITHER FULL FAITH AND CREDIT NOR COMITY REQUIRES ENFORCEMENT OF THE TEXAS INJUNCTION.

POINT III

TEXAS HAS NOT ADOPTED THE UNIFORM INSURERS LIQUIDATION ACT OR ITS EQUIVALENT AND THE INJUNCTION SHOULD NOT BE ENFORCED IN NEW JERSEY.

*POINT IV*

THE TEXAS INJUNCTION, IF ENFORCEABLE IN NEW JERSEY, DOES NOT REQUIRE A STAY OF THE NEW JERSEY ACTION.

We affirm the order granting a stay of litigation against Highlands.

I.

■ We first address the Halls' argument that neither full faith and credit nor comity requires New Jersey's courts to recognize the stay issued by the Texas court. In large measure, that argument has already been considered by us in *Aly, supra,* 360 *N.J.Super.* at 220–227, 822 *A.*2d 615. Our conclusion there, that the Constitution's full faith and credit clause, *U.S. Const.* art. IV, § 1, as implemented by 28 *U.S.C.A.* § 1738, was inapplicable to the interlocutory injunction [4] entered by the Pennsylvania court to permit rehabilitation of Legion Insurance Company,[5] whereas principles of comity required deference to the Pennsylvania court's order for a time adequate to serve the needs of rehabilitation, resolves many of the arguments presented by the Halls in this case, and requires little repetition here.

We emphasize, however, our recognition that, because regulation of the business of insurance has been left to the states and is not the subject of unifying federal control,[6] interference by a state with the rehabilitation of an insurer domiciled elsewhere by failing to recognize a stay of litigation "threatens to adversely interfere

---

[4] *Underwriters, supra,* upon which Highlands relies in arguing that the November order was entitled to full faith and credit, is distinguishable because the order at issue there, approving the plan of rehabilitation, was final in nature.

[5] The UEFJA defines an enforceable "foreign judgment" as "any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this State." *N.J.S.A.* 2A:49A–26. A foreign judgment filed in New Jersey has the same effect as a New Jersey judgment. *N.J.S.A.* 2A:49A–27.

[6] *See* McCarran–Ferguson Act, 15 *U.S.C.A.* §§ 1011–15 (permitting regulation of the business of insurance by the several States.)

with the process of rehabilitation of the insurer to the detriment of [the insurer's] policyholders nationwide," invites retaliatory action when a New Jersey domiciled insurer faces rehabilitation, and raises the risk of "a chaotic rush on the assets of an insurer" just when the receiver is seeking to marshal and conserve the insurer's assets and fiscally re-order the company. *Aly, supra,* 360 *N.J.Super.* at 222–23, 822 *A.*2d 615. As the New Jersey Commissioner of Insurance, appearing as *amicus curiae* in *Aly* noted,

> [a] stay imposed during the period of rehabilitation or, if ultimately that process is unsuccessful, any further stay entered for purposes of liquidation, is designed to protect the interests of policyholders, creditors of the insurer and the public in general by affording the Rehabilitator both the time and the tools needed to efficiently utilize the available resources of the insurer to restore it to financial health.

> [*Aly, supra,* 360 *N.J.Super.* at 223, 822 *A.*2d 615 (footnote omitted).]

The adoption by New Jersey of the Uniform Insurers Liquidation Act (UILA), *N.J.S.A.* 17:30C–1 to –31, applicable to liquidations and rehabilitations (*N.J.S.A.* 17:30C–1c), manifests this State's recognition of the importance of centralizing the management of delinquency proceedings in the courts of one state and avoiding interference with that management. The UILA, promulgated in 1939, was designed, through the formulation of uniform procedures for use in reciprocal states,[7] to eradicate problems caused by the wide distribution of insurer assets and liabilities throughout the states and then-existing differences in the statutes of various states with respect to the treatment of special deposits, preferred claims, securities, set-offs, and the administrative and judicial procedures to be followed when rehabilitation or liquidation of a troubled insurer is required. *See* Prefatory Note, *Uniform Insurers Liquidation Act,* 13 *U.L.A.* 322 (1986 & Supp. 1991).

---

[7] A reciprocal state is defined in New Jersey as "any state other than this State in which in substance and effect the provisions of the Uniform Insurers Liquidation Act ... are in force, including the provisions requiring that the commissioner or equivalent insurance supervisory official be the receiver of a delinquent insurer." *N.J.S.A.* 17:30C–1f.

The purpose, thus, of the UILA is to provide for a uniform, orderly and equitable method of making and processing claims against financially troubled insurers and to provide for fair procedures for rehabilitating the business of such insurers and, if necessary, distributing their assets.

[*In re Mutual Benefit Life Ins. Co.*, 258 *N.J.Super.* 356, 368, 609 *A.*2d 768 (App.Div.1992).]

As a United States District Court judge has observed in the context of insurer liquidation:

The need for giving one state exclusive jurisdiction over delinquency proceedings has long been recognized in the courts.

Experience has demonstrated that, in order to secure an economical, efficient, and orderly liquidation and distribution of the assets of an insolvent corporation for the benefit of all creditors and stockholders, it is essential that the title, custody, and control of the assets be intrusted to a single management under the supervision of one court. Hence other courts, except when called upon by the court of primary jurisdiction for assistance, are excluded from participation. This should be particularly true as to proceedings for the liquidation of insolvent insurance companies, for the reasons adverted to by Mr. Justice Cardozo in *Clark v. Williard*, 292 *U.S.* 112, [123–24, 54 *S.Ct.* 615, 620, 78 *L.Ed.* 1160, 1167 (1934) ][*e.g.*, that insurance companies, being excluded from bankruptcy, would be required to "submit to dismemberment, however great the waste or inequality," if receivers are not appointed with powers to conserve and distribute assets].

[*Ballesteros v. N.J. Prop. Liability Ins. Guaranty Ass'n*, 530 *F.Supp.* 1367, 1371 (D.N.J.), *aff'd*, 696 *F.*2d 980 (3d Cir.1982) (quoting *Motlow v. Southern Holding & Securities Corp.*, 95 *F.*2d 721, 725–26 (8th Cir.), *cert. denied*, 305 *U.S.* 609, 59 *S.Ct.* 68, 83 *L.Ed.* 388 (1938)).]

The UILA permits the entry of injunctions such as that entered by the Texas court. *N.J.S.A.* 17:30C–5.

Although Texas has not adopted the UILA,[8] no principled reason has been advanced to support the argument that a Texas

---

[8] We do not find it necessary to determine whether Texas is nonetheless a "reciprocal state," a determination that has only been made in Louisiana. *See Bonura v. United Bankers Life Ins. Co.*, 552 *So.*2d 1248, 1251 (La.Ct.App.1989) (finding it was not, but limiting reciprocity, contrary to the broader definition of "reciprocal state" found in the UILA, only to states that had specifically adopted that Act), *writ denied*, 558 *So.*2d 1125 (La.1990). However, the mechanical approach of *Bonura* was disapproved of by the Supreme Court of Louisiana in *All Star Advertising Agency, Inc. v. Reliance Ins. Co.*, 898 *So.*2d 369, 374 (La.2005). New Jersey has applied principles of comity regardless of the status of the domiciliary state. *See Aly, supra*, (invoking comity without discussion of the fact that Pennsylvania has not adopted the UILA or comparison of its

injunction entered in an insurance rehabilitation proceeding should for that reason be ignored in this State, thereby disordering the process of rehabilitation that the Insurance Commissioner of Texas has undertaken.[9]

The Halls argue additionally on appeal that the Texas injunction should be accorded no deference because they were not afforded notice of and an opportunity to be heard in that rehabilitation proceeding. At the outset, we note that no greater rights would have been accorded to them if the insurer to be placed in rehabilitation had been domiciled in New Jersey and thus subject to the UILA. *See N.J.S.A.* 17:30C–5 (authorizing the entry of an injunction "without notice"). Moreover, that neither the procedures of Texas nor New Jersey, though lacking in notice, are constitutionally infirm has been established without effective challenge in *Ballesteros, supra,* 530 *F.Supp.* at 1371. There, in the context of a similar challenge to the order of a New York court, Judge Sarokin, after noting that a rehabilitation action is an *in rem* proceeding, *id.* at 1370, stated:

> Plaintiff's argument ... misconceives the nature of a rehabilitation proceeding, which is designed to immediately preserve the assets of an impaired company.... If notice were required to be issued to all policyholders, and all policyholders had a right to participate in the hearing, the attendant delay would defeat the policyholders' interest in preventing the dissipation of the company's assets. Because the interests of policyholders are represented by the Superintendent and protected by the state court, due process is not violated by the failure to give notice of the rehabilitation proceedings to the policyholders.

rehabilitation and liquidation statutes with the UILA). *See also Murphy v. Ambassador Ins. Co.,* 195 *N.J.Super.* 274, 283, 478 *A.2d* 1243 (Ch.Div.1984) (finding Vermont to be a reciprocal state despite its differing treatment of preferences).

[9] The Halls urge a tit-for-tat rejection of the Texas injunction because a lower Texas court declined to enforce a stay issued by a Pennsylvania receivership court. *Robbins v. Reliance Ins. Co.,* 102 *S.W.*3d 739 (Tex.App.-Corpus Christi 2001), *judgment withdrawn,* 2003 *WL* 1847115 (Tex.App.2003). However, we note the contrary determination of the Texas Supreme Court in *Bard v. Charles R. Myers Ins. Agency,* 839 *S.W.*2d 791 (Tex.1992) (recognizing an injunction issued by a Vermont receivership court), which, we find, was ineffectively distinguished by the court in *Robbins.*

[*Id.* at 1371.]

*See also, Janak v. Allstate Ins. Co.*, 319 *F.Supp.* 215, 217–18 (W.D.Wisc.1970).[10]  None of the cases upon which the Halls rely in expressing a contrary view concern insolvency proceedings, and are thus distinguishable.

The Halls also argue that the Texas receivership action is "unfair, arbitrary and makes no legal sense" in that third-party claims are being paid, whereas first-party claims such as theirs are stayed.  But no evidence has been presented to us that would suggest that the Halls have ever sought to present their claim against Highlands to the Special Deputy Receiver, as mandated by *Tex. Ins.Code Ann.* art. 21.28, despite the fact that, as of May 2005, a claims filing deadline has not been set.  Thus, the Halls can have no knowledge as to how their claim would have been treated by the Receiver if it in fact had been properly presented. "Receipt of the required proof of claim is a condition precedent to the payment of any claim." *Tex. Ins.Code Ann.* art. 21.28 § 3(a).

Moreover, we note that, upon receipt of proof of claim, a receiver has the discretion to approve or reject that claim, and upon rejection, a claimant may file an action against the receiver in the court hearing the receivership proceeding. *Tex. Ins.Code Ann.* art. 21.28 § 3(h).  Entry of an injunction in the Highlands rehabilitation proceeding did not result in a permanent ban on policyholder claims, but merely required that they be presented to the Receiver in accordance with Texas law.

Contrary to the Halls' arguments, Texas does not distinguish between third-party liability claims and first-party claims for purposes of payment, both constituting Class 2 claims. *See Tex. Ins.Code Ann.* art. 21.28 § 8(a)(2)(B)(i) (defining the class, in relevant part, as consisting of "[a]ll claims by policyholders, beneficiaries, insureds, and liability claims against insureds covered under insurance policies and insurance contracts issued by the

---

[10] Highlands notes that a creditor in a bankruptcy proceeding is not entitled to notice and a hearing prior to entry of an automatic stay.  11 *U.S.C.A.* § 362(a).

insurer"). Further, the November 6 order authorized the Receiver to pay approved Class 2 claims under policies of insurance pursuant to *Texas Ins.Code Ann.* art. 21.28 § 8(b), but declared that "[n]o payments shall be made on any claims that are not approved by the Receiver." [11]

The claim against Highlands filed on behalf of Fuller–Austin Insulation Company and paid by the Receiver following a settlement markedly reducing its amount, to which the Halls refer as exhibiting evidence of unfairness, was a Class 2 claim, as would be the Halls' claim.[12] The Halls present no proof that payment of the Fuller–Austin claim in any way affects their ability to recover on their own claim, which as we have stated, remains unperfected. The Halls' forecast that payment of the Fuller–Austin claim would lead to the liquidation of Highlands has not yet been proven true (although Highlands remains in rehabilitation). Indeed, it can be argued that the payment significantly enhanced Highlands' financial position, since it caused the dismissal of a garnishment action that had frozen $300,000,000 of Highlands' assets.

---

[11] The Halls are thus mistaken in their argument that the November order permits their New Jersey action to continue, so long as the Receiver is made a party. Further, we seriously doubt our power in the present circumstances to exercise jurisdiction over Highlands' Receiver, whose contacts with New Jersey for purposes of jurisdiction remain unarticulated and seemingly unexplored. We note that it is the Receiver who has, by virtue of the November order, been vested with title to all of Highlands' assets of any kind or nature, and has been authorized to conduct the business of Highlands.

[12] The Fuller–Austin claim arose out of an August 1, 2003 California judgment against Highlands in the amount of $57,400,000 plus pre- and post-judgment interest, entered in a declaratory judgment action filed to determine Highlands' liability for allowed, pending and future asbestos claims against the Fuller–Austin Settlement Trust. Following entry of judgment, Fuller–Austin garnished $300,000,000 of Highlands' funds in the control of State Street Bank in Missouri. The Bank refused to release any of those funds without Fuller–Austin's consent. After entry of the order of rehabilitation, and filing of Fuller–Austin's proof of claim, that claim was settled for $30,500,000, and payment of that amount was authorized by the Receiver, with the approval of the Texas court, which occurred on July 28, 2004.

As a final matter, the Halls claim that enforcing a stay of their claim against Highlands exposes them to the risk of inconsistent verdicts when their action against the Bello Agency and Frasse is tried [13] and fails to promote judicial efficiency. We note that this risk can be eliminated by entry of a stay applicable to all defendants, relief that the Halls have never sought and apparently do not wish.

As a consequence of the foregoing, we find no grounds for distinguishing the Halls' position from that occupied by the claimants in *Aly* or for finding the rehabilitation scheme of Texas so different from that of New Jersey that principles of comity are rendered inapplicable.

## II.

When we turn to the issue of whether the Halls have demonstrated a hardship sufficient to warrant interference with the ordered scheme of insurer rehabilitation overseen by the Texas court, we find insufficient evidence to support so drastic a step.[14]

In reaching this conclusion, we are guided by the discussion of the types of hardship warranting relief found in *Aly, supra,* 360 *N.J.Super.* at 230–32, 822 *A.*2d 615, each of which, we find, was of catastrophic proportion. Although we recognize that the illustrations utilized there are not all-inclusive and that circumstances constituting hardship other than those that we have enumerated

---

[13] Summary judgment was granted to defendant Chase Manhattan Mortgage Corporation.

[14] We decline to distinguish that aspect of *Aly* discussing hardship applications on the grounds suggested by Highlands, *e.g.,* that the Texas injunction is permanent whereas the Pennsylvania injunctions in *Aly* were of relatively short duration, and the injunction at issue in *Aly* covered actions against both the insurer and its insureds, whereas the latter is not covered by the Texas injunction. Neither factor was significant to our decision in that case.

may arise, and while we recognize and appreciate the Halls' distress, we do not find such circumstances here.

The Halls are both well-educated. They retain their relative youth and their essential health. Their financial circumstances are reasonably secure [15] and, if augmentation is required, no evidence suggests an inability on the part of Lora Hall to resume work in the financial industry that she voluntarily terminated more than six years ago. Although they have not received any insurance proceeds as the result of their claim against Highlands, the Halls did receive approximately $160,000 from another insurer on their fire loss claim, which amount does not appear to have been utilized for repairs. The sale of the Halls' fire-damaged house for $1,040,000, although undoubtedly at a price lower than would have been realized if intact, still resulted in a profit to the Halls of approximately $292,000. At the time of Lora Hall's deposition in this matter, the Halls lived in a three-bedroom rented residence in Mountain Lakes, the town where they lived prior to the fire. Despite the Halls' claim that this residence is not comparable to their prior home, they can in no way argue that they have been deprived of essential shelter. As a final matter, we agree with the judge who denied the Halls' hardship application when he found that the Halls' private decision to forego children at this time because of uncertainties resulting from their failure to obtain an insurance recovery from Highlands and from this litigation does not constitute the type of true hardship that would permit a lifting of the Texas stay to permit the Halls' unperfected claim to be heard.

The order of the trial court enforcing the stay of litigation entered in the Highlands rehabilitation proceeding is therefore affirmed.

---

[15] The Halls' income in 2002 was reported as $149,495; in 2003 as $178,440.