SUELLA STULTZ, PLAINTIFF-RESPONDENT, v. LOUIS
STULTZ, DEFENDANT-APPELLANT.

Argued March 29, 1954—Decided May 3, 1954.

See also, 24 *N. J. Super*. 354, 94 *A. 2d* 527.

316

Mr. *Benjamin I. Kantor* argued the cause for the appellant (*Messrs. Karkus and Kantor,* attorneys).

Mr. *John Warren, Jr.,* argued the cause for the respondent (*Messrs. Parsons, LaBrecque, Canzona and Combs,* attorneys).

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal from that part of a judgment of the Appellate Division which affirmed a judgment of the Superior Court, Chancery Division, enjoining the defendant-appellant from proceeding with a divorce action instituted by him in the State of Florida. The appeal is here as a matter of right under *R. R.* 1:2–1(*b*), *Constitution* (1947), *Art.* VI, § V, *par.* 1(*b*). No appeal has been taken from that part of the judgment of the Appellate Division which reversed a judgment for maintenance of the Superior Court, Chancery Division.

The parties were married in 1906 and lived together until August 1931, since which time they have lived apart from each other. During most of this period the appellant supported the respondent, but since 1950 the respondent has been supported by virtue of an agreement made between her four adult sons and the defendant-appellant for her benefit under which certain stock in a company controlled by the appellant was turned over to the sons with the understanding that they would supply the support for the mother set forth in detail in the agreement.

The fact is that there has not been a refusal of support, so there would seem to be no basis for a decree for maintenance, but that in itself would not justify the denial of injunctive relief under the law if the respondent was so entitled.

In 1951 the appellant went to visit some relatives who were ill in Florida and during such visit apparently decided to remain in Florida permanently. The uncontradicted proof is he severed his business connections in this State and that he established a permanent residence in Florida. In May 1952 he instituted a suit for divorce in the courts of that state on the ground of extreme cruelty. The respondent on receipt of the papers in the Florida proceeding took the matter up with her local counsel who arranged for representation in the State of Florida and through these attorneys of her own choosing she entered an appearance in the action.

In July 1952 the plaintiff-respondent instituted her action for maintenance and injunctive relief and obtained personal service on the defendant-appellant while he was temporarily visiting in this State. In this action the trial court made no finding as to domicile but permanently restrained the Florida matrimonial proceeding and awarded a decree for separate maintenance.

On the appeal it appears that there was no question in the minds of the judges comprising the Appellate Division, 28 *N. J. Super.* 446, but that the defendant-appellant's residence in Florida was a *bona fide* one. The majority in that court stated: "Here, the husband manifested an apparent intention to remain indefinitely, if not permanently, in St. Petersburg * * *. True, more abundant proof of *animus manendi* would not ordinarily be available." In his dissenting opinion Judge Francis stated: "We are in agreement that Stultz established a *bona fide* residence in Florida and thus became a citizen of that state."

We are in accord with this finding because the proofs with respect to the intention to establish a domicile in Florida are on the face of the record uncontradicted. There is no proof to suggest that the Florida domicile is feigned with the intent to impose upon the divorce jurisdiction of that state, and there is no basis whatsoever for finding that the jurisdiction of the Florida court is fraudulent as of now.

In *Zieper v. Zieper,* 14 *N. J.* 551 (1954), we held that the Full Faith and Credit Clause of the *Federal Constitution,*

*Art.* IV, *Sec.* I, requires extra-territorial recognition of a decree of divorce obtained in keeping with the requirements of procedural due process, by a spouse who had acquired a *bona fide* domicile in the state in which the divorce was granted, although the spouse against whom the decree was entered had remained in the state of the original matrimonial domicile and had neither appeared nor been served with process in the state in which the divorce proceeding was instituted, and although recognition of such a divorce offended the policy of the former state. We could not hold otherwise in view of the recent holdings of the United States Supreme Court in *Williams v. State of North Carolina*, 325 *U. S.* 226, 65 *S. Ct.* 1092, 89 *L. Ed.* 1577 (1945); *Sherrer v. Sherrer*, 334 *U. S.* 343, 68 *S. Ct.* 1087, 92 *L. Ed.* 1429 (1948) and *Coe v. Coe*, 334 *U. S.* 378, 68 *S. Ct.* 1094, 92 *L. Ed.* 1451 (1948).

Where there is a voluntary submission to the foreign jurisdiction there is no ground for intervention by the New Jersey courts, or rather there is no ground unless there be a special equity justifying such relief notwithstanding the appearance. The policy of this court with respect to the exercise of such equitable jurisdiction in situations as here presented was stated by Mr. Justice Heher in *O'Loughlin v. O'Loughlin*, 6 *N. J.* 170, *pp.* 178, 179 (1951):

"There can be no doubt of the power of a court of equity to impose restraints upon persons within the control of its process against action beyond the state. Ordinarily, a citizen of a state may go abroad for such remedies and relief as may be available in the jurisdiction of his choice; but a court of equity has the undoubted power to enjoin those subject to its jurisdiction from seeking relief in a foreign proceeding which would not be compatible with equity and right conscience. The restraint is directed against the litigants, not the foreign jurisdiction. It constitutes an exercise of equity's jurisdiction *in personam* operative upon those within the reach of the court's process. The remedy of injunction acts *in personam*. But though the power is unquestionable, its exercise is often one of great delicacy; it is a remedy that is sparingly used, to serve the ends of justice in the particular case. Considerations of comity forbid interference with the prosecution of a proceeding in a foreign jurisdiction capable of affording adequate relief and doing complete justice, unless there be a special equity sufficient in conscience to stay

·the hand of the defendant. The question is not the existence of the power but the propriety of its exercise in a given case. The rule of comity is grounded in the policy of *avoiding conflicts of jurisdiction*, unless upon strong grounds, and the general principle that the court which first acquires jurisdiction of the issue has precedence."

*Cf. Goodrich on Conflict of Laws* (1949), *sec.* 78, *p.* 219; *Stumberg on Conflict of Laws* (2d ed. 1951), *pp.* 71, 73; 100, 104. We specifically indicated our adherence to this doctrine in the following cases: *Peff v. Peff*, 2 *N. J.* 513, 521, 522 (1949); *O'Loughlin v. O'Loughlin, supra; Staedler v. Staedler*, 6 *N. J.* 380, 392 (1951); *Robison v. Robison*, 9 *N. J.* 288, 291 (1952); *Isserman v. Isserman*, 11 *N. J.* 106, 113 (1952).

The cases of *Kempson v. Kempson*, 58 *N. J. Eq.* 94 (*Ch.* 1899), modified 63 *N. J. Eq.* 783 (*E. & A.* 1902), and *Ippolito v. Ippolito*, 3 *N. J.* 561 (1950) are distinguishable because in these cases the *bona fides* of the alleged foreign domicile were at issue. In the *O'Loughlin* case, 6 *N. J.* 170 (1951), the validity of the Nevada decree was not in dispute and the issues involved were the arrears of alimony as such and supervision over future alimony payments. See *O'Loughlin v. O'Loughlin*, 12 *N. J.* 222 (1953).

Under these principles the Superior Court, Chancery Division, was in error in exercising jurisdiction of the injunctive proceeding. That part of the judgment of the Appellate Division which affirmed the restraint against the appellant proceeding with his cause of action for divorce in the State of Florida is reversed and the complaint is dismissed. No costs.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.