CITY OF PHILADELPHIA, PLAINTIFF-RESPONDENT, v. LUCY
I. AUSTIN, DEFENDANT-APPELLANT.

Argued October 6, 1980—Decided May 18, 1981.

*William S. Ruggierio* argued the cause for appellant (*Ruggierio & Freeman*, attorneys).

*Charles Crabbe Thomas* argued the cause for respondent.

*John L. McGoldrick* submitted a brief on behalf of *amicus curiae* New Jersey Car and Truck Rental and Leasing Association (*McCarter & English*, attorneys; *Mr. McGoldrick* and *Roslyn S. Harrison*, on the brief).

The opinion of the Court was delivered by

POLLOCK, J.

The primary issue in this case is whether the courts of New Jersey must extend full faith and credit to a Pennsylvania civil

court judgment for a fine for failure to file tax returns required by the Philadelphia Wage Tax Ordinance. A related question is whether the courts of New Jersey will enforce the judgment as a matter of comity.

The Burlington County District Court found that the judgment was entitled to full faith and credit and granted a motion for summary judgment for Philadelphia. 171 *N.J.Super.* 118 (1979). We granted direct certification on our own motion. 82 *N.J.* 518 (1980). We affirm for the reasons set forth in this opinion.

Defendant Austin is a New Jersey resident who worked from 1967–1974 at the Frankford Arsenal, a federal enclave in Philadelphia. She did not file any returns or pay any of the taxes required by the Philadelphia Wage Tax Ordinance for those years. Under the Ordinance, a person who fails to file a return is subject, in addition to interest of ½% and a penalty of 1% per month, to a fine of not more than $300 and imprisonment for not more than 90 days. Philadelphia Code § 19–508. The sole subject of this litigation is the enforceability in New Jersey of a civil judgment rendered in the Philadelphia Court of Common Pleas for one $300 fine for each of the eight years that Mrs. Austin failed to file a return, for a total of $2400.

Attempts by Philadelphia to collect its wage tax from New Jersey residents have a long litigation history. *City of Philadelphia v. Smith*, 82 *N.J.* 429, 431–432 (1980). In *Smith*, we determined that the civil penalty of 1% per month was not punishment, but compensation for the expense of collecting the delinquent taxes. *Id.* at 433. We held, therefore, that the Full Faith and Credit Clause required New Jersey to recognize a Pennsylvania judgment that imposed a civil penalty of 1% per month. Nonetheless, we left unresolved whether the $300 fine, if reduced to a judgment, must be enforced by the courts of New Jersey. *City of Philadelphia v. Smith, supra,* 82 *N.J.* at 434.

I

The initial hurdle to enforcement in New Jersey of the judgment in this case is the "penal exception" to the Full Faith and Credit Clause. Philadelphia acknowledges that the Ordinance underlying the judgment is a penal law, but contends that the penal exception to the Full Faith and Credit Clause does not preclude enforcement of the judgment.

Our analysis begins with the United States Constitution, which provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." *U.S.Const.*, Art. IV, § 1. The language of the clause is so broad that a literal reading would demand enforcement of the judgment at issue in this case. The congressional act implementing that constitutional provision apparently buttresses that approach: "[J]udicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law and usage in the courts of such State . . . from which they are taken." 28 *U.S.C.A.* § 1738 (1966).

The purpose of the Full Faith and Credit Clause was to alter the status of the states as independent sovereigns and to integrate them into a single nation in which a party could enforce a just claim regardless of its state of origin. *Milwaukee County v. M. E. White Co.*, 296 *U.S.* 268, 276–277, 56 *S.Ct.* 229, 233–34, 80 *L.Ed.* 220 (1935). Consequently, the goal of the Full Faith and Credit Clause was that a judgment would be as conclusive in every state as in the state where the judgment was rendered. *Magnolia Petroleum Co. v. Hunt*, 320 *U.S.* 430, 438, 64 *S.Ct.* 208, 213, 88 *L.Ed.* 149 (1943). *See Hampton v. M'Connel*, 16 *U.S.* 234 (3 Wheat.), 4 *L.Ed.* 378 (1818).

An exception to the sweep of the language developed early in the interpretation of the clause. Known as the "penal exception," it grew from a laconic statement by Chief Justice Marshall: "The courts of no country execute the penal laws of another." *The Antelope*, 23 *U.S.* 66, 123 (10 Wheat.), 6 *L.Ed.* 268 (1825).

Neither *The Antelope* nor the subsequent cases interpreting the penal exception involved the enforcement of state tax laws. As the penal exception developed, however, it encompassed the enforcement of civil money claims in favor of a governmental entity. In *Wisconsin v. Pelican Ins. Co.*, 127 *U.S.* 265, 8 *S.Ct.* 1370, 32 *L.Ed.* 239 (1888), the Court declined to exercise original jurisdiction over the enforcement of a judgment recovered against a Louisiana insurance company by the State of Wisconsin in a Wisconsin court. The judgment was entered in a civil suit to recover a penalty for the failure to file an annual statement of financial condition. Underlying the *Pelican Insurance* decision was the principle that the Court could exercise original jurisdiction only when the action would be entertained by the courts of the state of citizenship of the defendant. Because the penal exception precluded enforcement of the judgment in the courts of Louisiana, the Court ruled that it could not exercise original jurisdiction. *Id.* at 291, 8 *S.Ct.* at 1374; *R. Leflar, American Conflicts Law*, § 75 at 151 (3 ed. 1977). In defining the penal exception, the Court wrote that the exception "applie[d] not only to prosecutions and sentences for crimes and misdemeanors, but to all suits in favor of the State for the recovery of pecuniary penalties for any violations of its statutes for the protection of its revenue, or other municipal laws, and to all judgments for such penalties." *Pelican Ins. Co., supra*, 122 *U.S.* at 290, 8 *S.Ct.* at 1374. Although the reference to revenue laws was dictum, the decision resulted in the denial of full faith and credit to claims for taxes for almost fifty years. *See, e. g., Moore v. Mitchell*, 30 *F.2d* 600, 602 (2 Cir. 1929); *Restatement of Conflict of Laws* § 443 Comment a, Illustration 2 (1934).

The accepted definition of a penal law appears in another non-tax case:

> The question whether a statute of one State, which in some aspects may be called penal, is a penal law, in the international sense, so that it cannot be enforced in the courts of another State, depends upon the question whether its purpose is to punish an offense against the public justice of the State, or to afford a private remedy to a person injured by the wrongful act. [*Huntington v. Attrill*, 146 *U.S.* 657, 673–674, 13 *S.Ct.* 224, 229–30, 36 *L.Ed.* 1123 (1892).]

Thus, punishment of a public offense is an essential characteristic of a penal law.

In an attempt to avoid liability on out-of-state judgments for unpaid taxes, some delinquent taxpayers sought to analogize the enforcement of a claim for taxes to punishment of a public offense. The United States Supreme Court has rejected the analogy. *Milwaukee County, supra*, 296 *U.S.* at 279, 56 *S.Ct.* at 235. In *Milwaukee County*, the Court determined that in a suit in Illinois, full faith and credit should be accorded to a Wisconsin judgment for over $3,000 of unpaid corporate income taxes together with interest and a 2% penalty. Describing the 2% penalty as "nominal," the Court concluded that the penalty was not "of such a nature to preclude suit to recover it outside the state of Wisconsin." *Id.* at 280, 56 *S.Ct.* at 235. Citing *Huntington* and *Pelican Insurance, supra*, the Court expressly reserved the question whether full faith and credit must be given to a judgment for an obligation created by a penal law in the international sense "even though a suit for the penalty before reduced to judgment could not be maintained outside of the state where imposed." *Id.* at 279, 56 *S.Ct.* at 235; *Restatement (Second) of Conflict of Laws*, § 120 Comment d, Reporter's Note to Comment d (1971). Nonetheless, the import of *Milwaukee County* was that the mere fact that a tax claim was asserted by a governmental entity did not invoke the penal exception.

In this case, the civil judgment arises out of a fixed dollar penalty unrelated to the amount of the tax claim. Consequently, our concern is whether the punitive nature of this penalty justifies the denial of full faith and credit to a judgment from a sister state. Neither the United States Supreme Court nor this Court has ever squarely decided whether to deny full faith and credit to a money judgment of another state on the ground that it was based on a penal claim. *See Restatement (Second) of Conflict of Laws*, § 120 Comment d (1971). Thus, the question becomes whether the penal exception to the Full Faith and Credit Clause applies to a civil money judgment based on a $300 penalty for failure to file an income tax return. In resolving

that question, we shall consider the judgment and the underlying claim.

■ We recognize that the reduction of the penalty to a civil judgment is a significant change in its status. That metamorphosis diminishes the penal nature of the claim and enhances the enforceability of the judgment under the Full Faith and Credit Clause. As the *Milwaukee County* Court wrote, "[a] cause of action on a judgment is different from that upon which the judgment was entered." *Milwaukee County, supra,* 296 *U.S.* at 275, 56 *S.Ct.* at 233. The Court recognized that, although one state might refuse to enforce the revenue laws of another state, a different result should obtain if the foreign state had reduced its claim to judgment. *Ibid. See also Magnolia Petroleum Co., supra,* 320 *U.S.* at 438, 64 *S.Ct.* at 213 (in granting full faith and credit to worker's compensation bureau judgment, no exception to full faith and credit "in the case of a money judgment rendered in a civil suit"). Our decision last year in *Philadelphia v. Smith, supra,* also recognized that, for purposes of full faith and credit, a penalty of 1% per month, once reduced to judgment, should be treated like any other money judgment. *See also New York v. Coe Mfg. Co.,* 112 *N.J.L.* 536 (E. & A. 1934) (full faith and credit accorded to judgment recovered in New York for corporate franchise taxes and interest).

■ Neither *Milwaukee County* nor *Huntington* expressly overruled the dictum in *Pelican Insurance* that the penal exception applied to a suit by a government to recover pecuniary penalties for violation of its revenue laws. The combined effect of *Milwaukee County* and *Huntington,* however, was to remove from the penal exception civil judgments based on tax claims that included interest and civil penalties. By defining a penal law as a punitive law to redress a public wrong, *Huntington,* in effect, exempted penalties in aid of the enforcement of tax laws. *See Huntington, supra,* 146 *U.S.* at 673–674, 13 *S.Ct.* at 229–30; *G. Stumberg, Principles of Conflict of Laws* 116 (1963); Reese & Johnson, "The Scope of Full Faith and Credit to Judgments," 49

*Colum.L.Rev.* 153, 156 (1949). By declaring that full faith and credit could not be denied to a civil judgment merely because the underlying claim is for taxes, *Milwaukee County* discredited the penal exception insofar as it related to revenue laws. *See Milwaukee County, supra,* 296 *U.S.* at 279, 56 *S.Ct.* at 235; *H. Goodrich & E. Scoles, Handbook of the Conflict of Laws* § 12 n.102 (4 ed. 1964); 49 *Colum.L.Rev., supra* at 156. Under the circumstances of this case, we see no reason to resuscitate the revenue exception and breathe new life into the penal exception.

Although the reduction of the claim to a judgment might be sufficient by itself to remove the barrier of the penal exception, other reasons support enforcement of the judgment under the Full Faith and Credit Clause. The $300 penalty in the Philadelphia Ordinance is part of a tax law designed to collect revenues; it is imposed for failure to file an income tax return, an offense closely related to the collection of revenues. In fact, the $300 penalty may be necessary to compensate Philadelphia for its expense in collecting delinquent taxes. *See City of Philadelphia v. Smith, supra,* 82 *N.J.* at 434. As an aid to the collection of taxes, the nature and purpose of the $300 penalty neutralizes its penal sting. We conclude that the purpose of the $300 penalty is not to punish, but to grant a civil remedy to the City in its role as tax collector.

We note that the civil remedies provided by the New Jersey income tax law for collection of delinquent taxes are similar to the remedies in the Philadelphia Ordinance. *See N.J.S.A.* 54A:9-6(b), (e), (i). A deficiency due to negligent or intentional disregard without intent to defraud results in a 5% penalty, *N.J.S.A.* 54A:9-6(b); a deficiency due to fraud, however, results in a 50% penalty, *N.J.S.A.* 54A:9-6(e). An additional civil penalty may be assessed up to $1,000. *N.J.S.A.* 54A:9-6(i).

One difference between the New Jersey tax law and the Philadelphia Code is that the Code provides for a 90-day prison term in addition to the fine. The provision in the New Jersey statute for imprisonment is contained in a separate section

pertaining to criminal penalties. That section provides for a fine not to exceed $5,000 and imprisonment not to exceed one year, or both. *N.J.S.A.* 54A:9–15. The provision in the Philadelphia Ordinance for the imposition of a prison term is not relevant, however, because the judgment is for a monetary penalty only. The extraterritorial enforcement of criminal judgments imposing imprisonment has generally been resolved not by recourse to the Full Faith and Credit Clause, but through extradition and interstate rendition. Leflar, "Extrastate Enforcement of Penal and Governmental Claims," 46 *Harv.L.Rev.* 193, 196 (1932). To summarize, both the Philadelphia Code and the New Jersey statute provide similar remedies against delinquent taxpayers. Both treat the imposition of a monetary fine as a civil remedy.

We conclude that the Full Faith and Credit Clause requires enforcement of the Pennsylvania judgment for fines for failure to file tax returns required by the Philadelphia Wage Tax Ordinance. In reaching that conclusion, it is not necessary to reject outright the penal exception to the Full Faith and Credit Clause. Indeed, that conclusion would be inappropriate since the United States Supreme Court has continued to recognize the vitality of the penal exception. *Nelson v. George*, 399 *U.S.* 224, 229, 90 *S.Ct.* 1963, 1966, 26 *L.Ed.*2d 578 (1970). In this decision, we distinguish between a purely penal law and a tax law with penal provisions. The Philadelphia Wage Tax Ordinance is a hybrid containing both tax and penal features, and the penal provision intertwines with the revenue raising feature of the tax law. That penal provision is transformed by the reduction of the claim to a civil judgment. We leave unresolved, however, the question of enforcement of an extrastate civil judgment containing penalties for violation of laws other than tax laws, such as parking ordinances.

## II

In the alternative, we reach the same result under principles of comity. Comity is the basis for voluntary enforce-

ment or recognition by one state of the judicial proceedings of a sister state. *Mast Foos & Co. v. Stoerer Mfg. Co.*, 177 *U.S.* 485, 488–489, 20 *S.Ct.* 708, 710, 44 *L.Ed.* 856 (1900); *Stultz v. Stultz,* 15 *N.J.* 315, 319–320 (1954) (quoting *O'Loughlin v. O'Loughlin*, 6 *N.J.* 170, 179 (1951). Comity is not a binding obligation on the forum state, but a courtesy voluntarily extended to another state for reasons of "practice, convenience and expediency." *Mast Foos & Co., supra,* 177 *U.S.*, at 488, 20 *S.Ct.* at 710; *Polyckronos v. Polyckronos,* 17 *N.J. Misc.* 250, 255 (Ch. 1939). Deference is not offered, however, when it would contravene the public or judicial policy of the forum state. Thus, application of comity involves an examination by the Court of both the public policy of the forum state and the impact on that policy of enforcing the foreign proceeding.

■ Several considerations are relevant to deciding whether to enforce as a matter of comity an extrastate claim or judgment based on a penal provision in a revenue law. Those considerations include: (1) the convenience of the litigants and witnesses, as well as the interests of justice (forum non conveniens); (2) the dissimilarity of remedies in the different jurisdictions; and (3) the existence of conflicts with the local public policy of the forum. *See* 46 *Harv.L.Rev., supra,* at 202.

■ The proximity of Philadelphia to New Jersey minimizes the concern that defending either the original action or this action might pose an undue inconvenience for Mrs. Austin. Although a New Jersey resident, Mrs. Austin participated in the Pennsylvania proceeding and does not raise lack of jurisdiction as a defense on this appeal. Furthermore, forum non conveniens is an insignificant consideration when a claim has been reduced to judgment and there is no claim of lack of jurisdiction of either the foreign state or the forum state.

As discussed at pages 62–63, *ante,* New Jersey and Philadelphia provide substantially similar remedies for the collection of delinquent taxes. In addition, the public policy of New Jersey is to effectuate the laws of sister states. *State v. Lueder,*

74 *N.J.* 62, 70 (1977); *In re Marino*, 23 *N.J. Misc.* 159, 166 (Ct.Comm.Pleas 1945).

Like thousands of other New Jersey residents, Mrs. Austin commuted daily from New Jersey to work in a neighboring state. Commuting to work in other states is a way of life for many New Jersey residents. Similarly, many residents of other states work in increasing numbers in New Jersey. Under these circumstances, the reciprocal enforcement of wage tax laws is especially important to New Jersey and its neighboring states. As we have stated, "it is to the mutual advantage of neighboring states to recognize and enforce one another's tax revenue laws." *City of Philadelphia v. Smith, supra,* 82 *N.J.* at 434.

Furthermore, New Jersey and Pennsylvania have entered an agreement for the reciprocal enforcement of taxes, *Reciprocal Personal Income Tax Agreement Between Commonwealth of Pennsylvania and State of New Jersey,* 19 Oct. 1977 (Reciprocal Agreement). Additionally, *N.J.S.A.* 54:8A–46 provides that the Attorney General may sue in the court of any sister state to collect taxes due New Jersey. The same statute provides for the enforcement of income taxes, including interest and penalties imposed by any state that extends like comity to New Jersey. Although they embrace state income taxes only, the Reciprocal Agreement and *N.J.S.A.* 54:8A–46 are consistent with our enforcement of the Philadelphia Wage Tax.

Underlying the extrastate enforcement of judgments for unpaid taxes, interest and penalties is the recognition that taxes are the lifeblood of government, the vital force needed to sustain the public interest. Stated otherwise, "Taxes are what we pay for civilized society." *Compania General de Tabacos v. Collector,* 275 *U.S.* 87, 100, 48 *S.Ct.* 100, 105, 72 *L.Ed.* 177 (1927). When one taxpayer fails to bear his or her fair share, the burden becomes heavier on other taxpayers. The inability to enforce a tax obligation in another state increases the burden on citizens

of the taxing state. Tax evasion does not reduce the cost of government; it merely shifts the cost to others.

We conclude that the judgment against Mrs. Austin, based on eight $300 penalties for failure to file an income tax return in accordance with the Philadelphia Wage Tax Ordinance, is entitled to recognition in New Jersey under principles of full faith and credit and comity.

The judgment of the Burlington County District Court is affirmed.

SCHREIBER, J., concurring.

I agree substantially with Justice Pollock's opinion. However, I am convinced that a civil monetary judgment is entitled to full faith and credit irrespective of its underlying basis.[1] Thus in discussing the Full Faith and Credit Clause, Justice Stone wrote in *Milwaukee County v. White Co.*, 296 *U.S.* 268, 275–276, 56 *S.Ct.* 229, 233, 80 *L.Ed.* 220, 227 (1935):

> A cause of action on a judgment is different from that upon which the judgment was entered. In a suit upon a money judgment for a civil cause of action the validity of the claim upon which it was founded is not open to inquiry, whatever its genesis. Regardless of the nature of the right which gave rise to it, the judgment is an obligation to pay money in the nature of a debt upon a specialty. Recovery upon it can be resisted only on the grounds that the court which rendered it was without jurisdiction, ... or that it has ceased to be obligatory because of payment or other discharge; ... or that it is a cause of action for which the state of the forum has not provided a court, ... unless it is compelled to do so by the privileges and immunities clause; ... or possibly because procured by fraud, ....

When the Court stated that it intimated "no opinion whether a suit upon a judgment for an obligation created by a penal law,

---

[1]Whether a criminal judgment for a monetary fine or penalty is entitled to full faith and credit is unsettled. See *Goodrich, Handbook of the Conflict of Laws* (3d ed. 1949), § 213 at 625 & n. 72 where the author compares *Schuler v. Schuler*, 209 *Ill.* 522, 71 *N.E.* 16 (1904), holding such a judgment is entitled to full faith and credit, with *Arkansas v. Bowen*, 3 *App.D.C.* 537 (1894), holding such a judgment is not entitled to full faith and credit.

in the international sense," was entitled to full faith and credit, it was referring to a criminal, not a civil, judgment. Moreover, the rationale of the decision when considered with the purpose of the Clause strongly suggests that even a criminal monetary judgment is entitled to enforcement.

The majority's statement that the Supreme Court continued in *Nelson v. George*, 399 *U.S.* 244, 90 *S.Ct.* 1963, 26 *L.Ed.2d* 578 (1970), to recognize the penal exception to the Full Faith and Credit Clause does not impact on the principle that one state must enforce the civil monetary judgments of a sister state. See *Goodrich, Handbook of the Conflict of Laws* (3d ed. 1949), § 213 at 624. *Nelson v. George* stands for the proposition that the Full Faith and Credit Clause may not be employed to enforce criminal orders of another state. In that case the petitioner, who was serving a sentence in California, sought to attack a detainer filed by North Carolina based on a North Carolina conviction. The Court held that the effect to be given to the North Carolina conviction as it related to petitioner's custody in California depended on the state law of California and not on the Full Faith and Credit Clause.

Civil monetary judgments are entitled to the benefit of the Full Faith and Credit Clause. Neither the validity of the claim nor the nature of the underlying obligation impair the full faith and credit due civil monetary judgments. Furthermore, there does not appear to be any justifiable basis for refusing to treat criminal monetary judgments in the same fashion.

SCHREIBER, J., concurring in the result.

*For affirmance*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For reversal*—None.