# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE SEP 2 6 2013

for CHIEF JUSTICE



This opinion was filed for record
at 8:00 a.m. on Sept 26, 2013

Ronald R. Carpenter
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 79761-7 |
| DAYVA CROSS, | ) ) | En Banc |
| Petitioner. | ) ) ) | Filed    SEP 2 6 2013 |

CHAMBERS, J.*—Dayva Cross pleaded guilty to killing his wife and two of her three daughters in 2001 and was sentenced to death. *State v. Cross*, 156 Wn.2d 580, 592, 132 P.3d 80 (2006). We affirmed his sentence on direct review. *Id.* When Cross entered his plea he did so by what we commonly call an *Alford*[1] plea. In an *Alford* plea, the accused technically does not acknowledge guilt but concedes there is sufficient evidence to support a conviction. A judge may accept such a plea only if it is made voluntarily, competently, with an understanding of the nature of the charge and the consequences of the plea, and when the judge is satisfied that there is a factual

---

*Justice Tom Chambers is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). We adopted the Alford holding in *State v. Newton*, 87 Wn.2d 363, 552 P.2d 682 (1976).

basis for the plea. *State v. A.N.J.,* 168 Wn.2d 91, 117, 225 P.3d 956 (2010) (citing *In re Pers. Restraint of Mendoza Montoya,* 109 Wn.2d 270, 277, 744 P.2d 340 (1987)); CrR 4.2(d). In his first personal restraint petition challenging the judgment and sentence, Cross contended, among other things, that an *Alford* plea is insufficient to support capital punishment and asked that we vacate his sentence and remand to the trial court with direction that the *Alford* plea be set aside, essentially rolling this case back to where it was in 2000. If Cross had prevailed on this issue, much of his personal restraint petition would have been mooted, so this court agreed to consider the issue separately. After oral argument we denied relief by order with opinion to follow. This is that opinion. We hold that a capital sentence can be predicated on an *Alford* plea and deny that portion of his personal restraint petition. The remaining issues will be disposed of by separate opinion.

## ANALYSIS

The character of the claimed error as constitutional or nonconstitutional would normally both structure our review and establish the petitioner's burden. At minimum, Cross must establish error and actual and substantial prejudice. *In re Pers. Restraint of Cook,* 114 Wn.2d 802, 810-12, 792 P.2d 506 (1990). The parties have elected not to discuss this character of the error and instead focus on the claimed error itself. Applying the minimum burden Cross must meet, we find no error and thus need not decide its character.

## 1. Common Law No-Contest Pleas

Essentially, Cross proposes a syllogism. At common law, a defendant could not plead no-contest to a capital charge. An *Alford* plea, he argues, is essentially a no-contest plea. Therefore, he concludes, Judge Joan DuBuque should not have accepted it.[2]

Cross's first premise is correct. By the mid-fourteenth century, English courts were accepting various types of no-contest pleas in misdemeanor cases. Neil H. Cogan, *Entering Judgment on a Plea of Nolo Contendere: A Reexamination of* North Carolina v. Alford *and Some Thoughts on the Relationship Between Proof and Punishment*, 17 ARIZ. L. REV. 992, 1003, 1007 (1975). For example, by 1431, defendants could enter a plea of "'ponit se in gratiam domini Regis' – he puts himself in the grace of the lord King," without specifically admitting guilt. *Id.* at 1005. But if charged with a felony, the defendant had the choice of confession, what we now call a guilty plea, or denial, what we now call a not guilty plea. *Id.* at 999, 1002. If the defendant denied the charge, he had to consent to some sort of trial. *Id.* If the defendant declined to plea, he could be tortured or imprisoned until he did. *Id.* at 1002-03 & n.86. There was apparently no mechanism for a trial judge to enter a plea on the defendant's behalf.

---

[2] The only court to consider whether an *Alford* plea could be accepted to a capital charge squarely dismissed the argument in three summary paragraphs, albeit with no discussion of the common law. *State v. Ray*, 310 S.C. 431, 435, 427 S.E.2d 171 (1993).

"Because the plea of *ponit se in gratiam* presented proof of guilt with reduced certainty, the punishment meted out to the accused appears to have been correspondingly reduced." *Id.* at 1011 (citing WILLIAM LAMBARD, EIRENARCHA 512 (1599)). *Ponit se in gratiam* could not be pleaded to felonies (which at the time almost always carried a potential death sentence) because "an implied admission was proof of insufficient certainty upon which to put a person to death." Cogan, *supra,* at 1013; *see also* Nathan B. Lenvin & Ernest S. Meyers, *Nolo Contendere: Its Nature and Implications,* 51 YALE L. J. 1255, 1262-63 (1942).

Defendants were pleading nolo contendere in England by 1716 and New York by 1721. Cogan, *supra,* at 1014, 1015 (citing THOMAS FARRESLEY, MODERN CASES (1716); JULIUS GOEBEL, JR. & T. RAYMOND NAUGHTON, LAW ENFORCEMENT IN COLONIAL NEW YORK 592-93 & n.180 (1944)). Over the years, nolo contendere and non vult contendere pleas were allowed for noncapital felonies, but less than a century ago the Pennsylvania Supreme Court observed, "[N]either in England nor in this country has the plea ever been allowable in capital cases." *Commonwealth v. Shrope,* 264 Pa. 246, 250, 107 A. 729 (1919); *see also* Cogan, *supra,* at 999. Instead, in capital cases, "guilt must be established by evidence which excludes all reasonable doubt. An implied confession of guilt cannot rise to the degree of certainty which would make it the equivalent of an express confession." *Shrope,* 264 Pa. at 250; *see also Hudson v. United States,* 272 U.S. 451, 451-52, 47 S. Ct. 127, 71 L. Ed 347

4

(1926);[3] *State ex rel. Clark v. Adams,* 144 W.Va. 771, 779, 111 S.E.2d 336 (1959) ("The courts, however, are unanimous in holding that in the absence of a statute to the contrary the plea of nolo contendere can not be accepted to an indictment for an offense for which capital punishment is prescribed."). Despite the history of refusing to accept the plea in felonies, in 1926, the United States Supreme Court approved the use of a nolo contendere plea in crimes that carried a prison sentence. *Hudson,* 272 U.S. at 452, 457.

There is nothing mystical about common law courts' reluctance to accept these various types of no-contest pleas in capital cases. While a confession was accepted as sufficient evidence of guilt at common law, once various types of duels and ordeals were set aside, there was no other way to test whether there was sufficient evidence of guilt except by trial. Cogan, *supra,* at 1000, 1003. Trial, it seems, could be held only if the defendant consented. *Id.* at 999 & nn.68-69. If the defendant did not consent to

---

[3] As the Supreme Court noted in *Hudson,*

> "An implied confession is where a defendant, *in a case not capital,* doth not directly own himself guilty, but in a manner admits it by yielding to the king's mercy, and desiring to submit to a small fine: in which case, if the court think fit to accept of such submission, and make an entry that the defendant posuit se in gratiam regis, without putting him to a direct confession, or plea (which in such cases seems to be left to discretion), the defendant shall not be estopped to plead not guilty to an action for the same fact, as he shall be where the entry is quod cognovit indictamentum."

*Hudson,* 272 U.S. at 453 (emphasis added) (quoting 2 WILLIAM HAWKINS, PLEAS OF THE CROWN 466 (8th ed. 1824)).

some method of proof, the judge could be put in the position of sentencing a man to death with only the accusation as evidence of guilt. As Professor Cogan noted:

> [A]n accused's refusal to confess or deny/consent, even if characterized as an implied admission, provided no such sufficient proof, evil fame of the accused notwithstanding. An accused might have refused to confess or deny/consent for many reasons, including among others, avoidance of forfeiture of lands and tenements, and distrust of the mode of proof. Thus, while it might have been reasonable to imply guilt from an accused's refusal to expressly admit or deny, such an implied admission appears not to have been clothed with enough certainty to constitute sufficient proof for a felony. Misdemeanors, on the other hand, were treated somewhat differently.

Cogan, *supra,* at 1003 (footnote omitted).

### 2. Alford *Pleas*

However, the next leg of Cross's syllogism, that the *Alford* plea[4] is essentially the same as the common law no-contest plea, fails. Unlike the common law no-contest pleas that could be entered without any factual support or independent determination of the existence of sufficient evidence to support a finding of guilt, an *Alford* plea in Washington State courts can be accepted only if the trial judge finds

---

[4] Henry Alford had been charged with first degree murder in North Carolina. After his attorney interviewed his proposed alibi witnesses and found they were unwilling to corroborate his absence from the crime scene, he agreed to plead guilty while maintaining his innocence. He later sought habeas relief in the federal courts on the theory that the due process clause of the Fourteenth Amendment did not allow a court to accept a guilty plea from defendants who maintained their innocence. The court disagreed. "In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it." *North Carolina v. Alford,* 400 U.S. 25, 38, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

that it is knowingly, voluntarily, and intelligently made, and that there is a satisfactory

evidentiary basis to accept the plea:

> The court shall not accept a plea of guilty, without first determining that it is
> made voluntarily, competently and with an understanding of the nature of the
> charge and the consequences of the plea. The court shall not enter a judgment
> upon a plea of guilty unless it is satisfied that there is a factual basis for the
> plea.

CrR 4.2(d). That evidence can come from any reliable source and must be sufficient

for a jury to conclude the defendant is guilty. *State v. Newton*, 87 Wn.2d 363, 369-70,

552 P.2d 682 (1976).

Thus, looking beyond the mere title of the pleas, the practical reason for

refusing to accept a no-contest plea at common law—that there was no mechanism to

decide if there was an evidentiary basis for the plea—does not exist for an *Alford* plea.

A trial judge may not accept an *Alford* plea without an evidentiary basis and without

concluding that the plea is knowing, voluntary, and intelligent. CrR 4.2(d). We

conclude that the historical common law bar to no-contest pleas in capital cases does

not apply to *Alford* pleas.

Alternatively, Cross argues that the trial judge was implicitly forbidden from

accepting his *Alford* plea by statute. As he notes, the Washington Legislature has, in

broad terms, incorporated the common law:

> The provisions of the common law relating to the commission of crime and the
> punishment thereof, insofar as not inconsistent with the Constitution and
> statutes of this state, shall supplement all penal statutes of this state and all

persons offending against the same shall be tried in the courts of this state having jurisdiction of the offense.

RCW 9A.04.060. But his alternative argument fails for the same reason the substantive argument fails—because it presumes that an *Alford* plea is substantially similar to a common law no-contest plea, and thus the common law prohibition would apply.

Cross also stresses that no-contest pleas have never been explicitly authorized by our legislature or by court rule. *See* CrR 4.2(a) ("A defendant may plead not guilty, not guilty by reason of insanity, or guilty."); CODE OF 1881, § 1054 ("There are but three pleas to the indictment. A plea of: 1. Guilty. 2. Not guilty. 3. A former judgment of conviction or acquittal . . . ."). Therefore, he reasons, "this Court can only conclude that the Legislature has *declined* to authorize the acceptance of an *Alford* plea in a capital case." Suppl. Br. of Pet'r at 10. But while the legislature has not explicitly approved of *Alford* pleas, this court has. *Newton*, 87 Wn.2d at 372. While *Newton* suggests that a trial court should be careful in accepting an *Alford* plea when the defendant actually asserts innocence, the question is whether the plea is "'a voluntary and intelligent choice among the alternative courses of action open to the defendant'" and whether there is a factual basis for the plea. *Id.* at 372-73 (quoting *Alford*, 400 U.S. at 31). Cross cites no authority for the implicit proposition that the court rules or superseded statutes trump this court's opinions.

8

RCW 10.01.060[5] prevents bench trials in capital cases. Cross argues from that that the legislature meant to prevent *Alford* pleas from being accepted in capital cases. This is an interesting argument. However, nothing in chapter 10.95 RCW, the capital punishment act, prevents a defendant from pleading guilty, and nothing in *Newton* limits it to noncapital crimes. An *Alford* plea is a type of guilty plea. Certainly, a trial judge can refuse to accept the plea. Judge DuBuque considered briefing and held several hearings on the subject before she did accept it. Clerk's Papers (CP) at 1638-47, 1171-77; Verbatim Report of Proceedings (VRP) (Oct. 19, 2000) at 7-39 (discussions of the appropriate evidentiary basis); VRP (Oct. 23, 2000) at 5-65 (more discussion of appropriate evidence), 65-193 (plea colloquy).

Cross does not make a compelling case that the legislature disapproves of *Alford* pleas. There is nothing direct in the Washington code that shows disapproval. Nor has the legislature taken any steps to amend chapter 10.95 RCW in the wake of *Newton* or after our opinion affirming Cross's death sentence in 2006, despite the fact

---

[5] No person informed against or indicted for a crime shall be convicted thereof, unless by admitting the truth of the charge in his or her plea, by confession in open court, or by the verdict of a jury, accepted and recorded by the court: PROVIDED HOWEVER, That except in capital cases, where the person informed against or indicted for a crime is represented by counsel, such person may, with the assent of the court, waive trial by jury and submit to trial by the court.

RCW 10.01.060.

the opinion says on its second page that Cross entered an *Alford* plea. *Cross,* 156 Wn.2d at 593.

There are advantages to an *Alford* plea. It permits a defendant to plead guilty without bearing the burden of some collateral effects that accompany an admission of guilt. For example, a defendant who enters either an *Alford* plea or a nolo contendere plea is not estopped from denying guilt in a subsequent civil case. *Clark v. Baines,* 150 Wn.2d 905, 917, 84 P.3d 245 (2004); Cogan, *supra,* at 1007 (citing, *e.g.,* Y.B. 9 Hen. 6, f. 60, pl. 8 (1431) (Eng.)). Cross argues that this supports the principle that an *Alford* plea should not be accepted in a capital case since "this advantage would cease to be of any significance. Avoiding the preclusive effect of collateral estoppel is of little use if one is dead." Suppl. Br. of Pet'r at 14. However, a defendant in a capital case does glean at least one advantage from an *Alford* plea: it limits the amount of evidence the State may seek to introduce.

### 3. Whether the Plea was Knowing and Voluntary

Cross makes a point which is well taken and could be persuasive if this were not a postjudgment collateral attack and if Cross seriously asserted his innocence to crimes of which he was convicted. Conviction requires proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). CrR 4.2(d) only requires the judge find a satisfactory factual basis for the plea. For example, there may be satisfactory evidence that a defendant committed the

10

charged act, such as a sex act or a killing, but little evidence that requisite states of mind were present. *Cf. A.N.J.,* 168 Wn.2d at 118. But this is true of every guilty plea. The defendant could almost always later claim that the evidence presented did not establish "beyond a reasonable doubt" every element of the crime, particularly when the crime includes an intent element. However, unlike common law no-contest pleas, *Alford* pleas may only be accepted upon an adequate factual showing, among other things.

Under our rules and case law, a Washington court will not accept a plea (let alone permit a defendant to be put to death upon that plea) unless the court first determines that the defendant is competent and fully understands the nature of and consequences of each and every charge to which the defendant pleads. *See id.* at 113-17. The plea must be voluntary and the trial judge must be fully satisfied there is a factual basis to support each charge. A record of that factual basis is preserved for review.

Cross does not seriously assert that his plea was not knowingly and voluntarily given and has not moved to withdraw his plea. A plea may be withdrawn if it is not given knowingly, intelligently, and voluntarily. *Id.* at 119 (citing *In re Pers. Restraint of Isadore,* 151 Wn.2d 294, 298, 88 P.3d 390 (2004)). We are aided in our review by Cross's statement on plea of guilty and the extensive colloquy between Judge DuBuque and Cross when he entered his plea. Cross entered his plea during voir dire.

11

By pleading guilty Cross bypassed the guilt phase of his trial and went directly to the penalty phase. The penalty phase was to determine whether or not the death penalty would be imposed. In his statement on plea of guilty, Cross admitted that he killed the three women but specifically stated that he did not believe that he committed the crimes in premeditated fashion or as part of a common scheme or plan. CP at 1656. Premeditation is an element of aggravated murder and common scheme or plan is an aggravator that subjects the defendant to the death penalty. Cross's plea was a calculated decision. Cross acknowledged that "there is a substantial likelihood that a jury would find premeditation beyond a reasonable doubt" and that he would be convicted. CP at 1205. The record strongly suggests Cross felt he had a better chance of persuading the jury in the penalty phase that he lacked a plan or premeditation if the jury did not hear the evidence in the guilt phase of the trial.

When taking his plea, Judge DuBuque and the State painstakingly walked Cross through the elements of the crimes of which he was charged, his potential defenses, the rights he was relinquishing, and the punishment he faced. VRP (Oct. 23, 2000) at 64-160. On the issues of premeditation and common scheme or plan, the judge had Cross state in his own words his understanding of the meaning of those concepts. *Id.* at 122-26. There is sufficient evidence upon this record for a jury to find guilt beyond a reasonable doubt. There is no doubt from the trial transcript that

there was substantial evidence from which the jury could find beyond a reasonable doubt that Cross acted with both premeditation and a common scheme or plan.

Entering an *Alford* plea was a legitimate tactical move. Because he pleaded guilty, it is highly likely the jury did not hear some of the gruesome details of the murders. By entering an *Alford* plea, he was not barred from arguing in the penalty phase that he lacked premeditation or a common scheme or plan. The tactic did not work. He cannot now say that he was unaware that the *Alford* plea could lead to a sentence of death.[6]

## CONCLUSION

At common law, there existed a procedure for defendants to enter no-contest pleas and place themselves within the grace of the King. Because the plea was not supported with any evidence to support a finding of guilt, such pleas we considered insufficient to support a capital penalty. However, the Washington State statutes and rules that provide for accepting an *Alford* plea are much different than those of ancient no-contest pleas and, if followed, do provide an adequate basis to support capital punishment. Current Washington law does not permit the acceptance of a guilty plea, including an *Alford* plea, "without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the

---

[6] Because we uphold the plea, we find it unnecessary to reach the State's argument that any defect in the plea was invited error.

13

consequences of the plea. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." CrR 4.2(d). A careful review of the record reveals that Cross's *Alford* plea was a calculated one. It likely avoided having all the gruesome details of the murders presented to the jurors at the guilt phase and preserved his ability to argue at the penalty phase of the trial that he killed the three women without premeditation or a common scheme or plan. Unfortunately for Cross his tactic did not work. The record reflects that his plea was knowing, voluntary, and intelligent. Cross has failed to show error. His petition on this issue is denied.

Chambers, J. PT

WE CONCUR:

Madsen, C.J.

Fairhurst. J.

Stephens, J.

Alexander, J.P.T.

Sanders, J.P.T.