# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3020-23

IN THE MATTER OF
REGISTRANT J.M.

_____

Argued April 1, 2025 – Decided May 19, 2025

Before Judges Gilson and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. ML No. 15-15-0037.

James H. Maynard argued the cause for appellant J.M. (Maynard Law Office, LLC, attorneys; James H. Maynard, on the briefs).

Natalie Pouch, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Bradley D. Billhimer, Ocean County Prosecutor, attorney; Natalie Pouch, of counsel and on the brief).

PER CURIAM

Registrant J.M. appeals from an order denying his motion to terminate all his obligations under the Registration and Community Notification Law (Megan's Law), N.J.S.A. 2C:7-1 to -23. He argues that his convictions for two

criminal offenses in Washington State should not be considered in New Jersey because the convictions were based on pleas where he did not admit his guilt to the offenses.

We reject that argument because it is contrary to the plain language of Megan's Law and inconsistent with well-established principles of comity. Accordingly, we affirm the April 17, 2024 order denying J.M.'s motion.

## I.

The material facts are not in dispute, and we discern them from the motion record. In May 2013, J.M. was charged in Washington with four counts of child molestation. The victims were two female students in the first and second grade of a private school where J.M. worked as a teacher. Both children reported that J.M. had touched them under their clothing on multiple occasions.

In 2014, J.M. pled guilty to two amended counts of communication with a minor for immoral purposes. In Washington, that offense is a gross misdemeanor. See RCW 9.68A.090(1).

In pleading guilty, J.M. did not admit that he committed the offenses. Instead, under Washington law, he acknowledged that it was in his best interest to plead guilty, he was pleading guilty voluntarily, and that he agreed "there [was] a substantial likelihood a finder of fact would find [him] guilty." He also

2

"agree[d that] the [c]ourt may review the certification for determination of probable cause to establish a factual basis for [his] plea[s] and for sentencing." The certification for determination set forth the facts reported by the two child victims.

In North Carolina v. Alford, the United States Supreme Court held that courts could, consistent with the United States Constitution, accept a guilty plea even if a defendant was unwilling or unable to admit guilt, provided that the defendant was willing to accept punishment and the court found sufficient facts to support the plea. 400 U.S. 25, 37-38 (1970). Washington allows what are known as Alford pleas. See In re Cross, 178 Wash. 2d 519, 525-26 (Wash. 2013) (holding that Washington courts can accept an Alford plea if the trial court judge finds that the plea was "knowingly, voluntarily, and intelligently made and that there is a satisfactory evidentiary basis to accept the plea").

The Washington court accepted J.M.'s Alford pleas, finding that there was probable cause to support the pleas and that J.M. had voluntarily and without coercion pled guilty. In that regard, the Washington court reviewed the certification for determination of probable cause and found that if J.M. "were to go to trial, that there is a substantial likelihood that a jury would find him guilty of the charges as they have been amended." The Washington court also found

that J.M. was pleading guilty "voluntarily" and "knowingly." Thus, the Washington court found J.M. "guilty" of the amended charges.

J.M. was sentenced in Washington in April 2014, and his judgment of conviction was amended twice in May 2014. J.M. was given a suspended sentence, under which he could be sentenced to probation, including up to 364 days in jail. J.M.'s Washington sentence also required him to "register as a sex offender" and undergo a sexual deviation evaluation. Additionally, J.M.'s Washington sentence expressly stated that if J.M. "move[d] to a new state, [he] must register with the new state" as a sex offender.

J.M. did not appeal his Washington convictions or sentence. Nor has J.M. filed a petition for post-conviction relief in Washington.

In 2015, J.M. moved to Ocean County, New Jersey and registered as a sex offender with the local police department. In March 2016, following a hearing, the Law Division entered an order classifying J.M. as a "Tier 1/Low Risk offender."

In June 2023, J.M. moved to terminate all his obligations under Megan's Law "ab initio." He asserted several arguments, including that (1) the State had failed to conduct a "similar to" analysis in assessing his Washington convictions

4

when he was tiered in 2016; and (2) his Washington convictions should not be recognized in New Jersey because he entered <u>Alford</u> pleas to those convictions.

On April 17, 2024, after hearing arguments, the Law Division issued a written opinion and order denying J.M.'s motion. In its comprehensive thirty-five-page-written opinion, the Law Division analyzed and rejected each of J.M.'s arguments.

The Law Division conducted a "similar to" analysis and found that J.M.'s Washington convictions were like New Jersey's crime of endangering the welfare of a child in the third-degree, N.J.S.A. 2C:24-4(a). The Law Division also held that J.M.'s Washington convictions should be recognized as convictions under Megan's Law in New Jersey even though J.M. had entered <u>Alford</u> pleas. In that regard, the Law Division reasoned that J.M.'s Washington convictions were "offenses" under N.J.S.A. 2C:7-2(b)(3) and, therefore, that those convictions required registration under Megan's Law.

J.M. now appeals from the April 17, 2024 order denying his motion to terminate his obligations under Megan's Law.

II.

On this appeal, J.M. makes one argument, with various sub-arguments, contending that New Jersey should not recognize his Washington convictions

because he entered <u>Alford</u> pleas. Specifically, J.M. articulates his arguments as follows:

> I. ALFORD PLEAS SHOULD NOT BE RECOGNIZED BY OUR COURTS BECAUSE THEY ARE "FOREIGN TO OUR STATE JURISPRUDENCE" AND DEGRADE THE "INTEGRITY OF OUR CRIMINAL JUSTICE SYSTEM"
>
> A. The New Jersey Supreme Court Has Held that Alford Pleas Threaten the Integrity of Our Criminal Justice System.
>
> B. Comity Is Not an Obligation, But a Basis For Voluntary Recognition of Another State's Judgments That Are Obtained In a Manner Consistent With the Public Policy of This State.
>
> C. The Washington Supreme Court's Interpretation as to the Nature of Alford Pleas under Washington State Law Establishes that Such pleas Are Inconsistent with the Public Policy of New Jersey.
>
> D. The Megan's Law Court Opinion Incorrectly Focused on Technical Aspects of J.M.'s Plea Agreement Instead of Determining Whether Recognizing the Conviction Would Violate New Jersey Public Policy.

At oral argument before us, J.M.'s counsel also asserted that the Law Division erred in conducting the "similar to" analysis. While that argument was

not expressly set forth in J.M.'s appellate briefs, we will address it for purposes of completely analyzing all J.M.'s arguments.

A.    The "Similar To" Analysis.

"Megan's Law generally establishes a registration system for sex offenders and offenders who commit predatory acts against children."  In re A.A., 461 N.J. Super. 385, 394 (App. Div. 2019).  Any person who "has been convicted . . . of a sex offense . . . shall register" under Megan's Law.  N.J.S.A. 2C:7-2(a)(1).  Megan's Law also specifically addresses registration obligations for offenders convicted of qualifying crimes in other jurisdictions.  See N.J.S.A. 2C:7-2(b)(3).  Accordingly, if a person is convicted of any crime or offense "similar to any offense enumerated in [N.J.S.A. 2C:7-2(b)(2)] or a sentence on the basis of criteria similar to the criteria set forth in [N.J.S.A. 2C:7-2(b)(1)] of this subsection entered or imposed under the laws of . . . another state," that person must register under Megan's Law.  Ibid.

In A.A., we held that a court considering an out-of-state conviction must analyze whether that conviction is similar to a New Jersey crime or offense that would require Megan's Law registration.  461 N.J. Super. at 394, 399.  We then explained that in conducting that analysis, a court must "(1) [u]ndertake an element-by-element legal comparison of the criminal codes of New Jersey with

that of the other jurisdiction; and (2) compare the underlying purposes of the criminal statutes." Id. at 399. We also explained that the court "may examine trustworthy, relevant evidence as to the underlying factual predicate for the out-of-state conviction." Ibid.

In this matter, the Law Division conducted a "similar to" analysis and found that J.M.'s Washington convictions were similar to a third-degree endangering the welfare of a child conviction under N.J.S.A. 2C:24-4(a)(1). We review that determination de novo. A.A., 461 N.J. Super. at 403.

J.M. was convicted of two counts of communication with a minor for immoral purposes in violation of Washington statute RCW 9.68A.090(1). That statute provides: "[A] person who communicates with a minor for immoral purposes, or a person who communicates with someone the person believes to be a minor for immoral purposes, is guilty of a gross misdemeanor." RCW 9.68A.090(1). In New Jersey, a person is guilty of endangering the welfare of a child in the third-degree if a person "engages in sexual conduct which would impair or debauch the morals of the child." N.J.S.A. 2C:24-4(a)(1).

The elements of the Washington statute are similar to the elements of New Jersey's endangering the welfare of a child statute. Both statutes prohibit exposing a minor child to communications or conduct for "immoral purposes"

8                                                                                              A-3020-23

that "would impair or debauch the morals of the child."  Compare RCW 9.68A.090(1) with N.J.S.A. 2C:24-4(a)(1).  Both statutes also prohibit the same type of conduct, with the shared purpose of protecting children.

Megan's Law states that a conviction for "an offense similar to any offense enumerated" in Megan's Law requires registration.  See N.J.S.A. 2C:7-2(b)(3).  Endangering the welfare of a child under N.J.S.A. 2C:24-4 is an enumerated offense requiring Megan's Law registration under N.J.S.A. 2C:7-2(b)(2).  Consequently, having conducted a de novo review, we agree with the Law Division that J.M.'s Washington convictions are convictions that require registration under Megan's Law.  See N.J.S.A. 2C:7-2(b)(3).

> B. Whether New Jersey Should Recognize a Conviction Resulting From An Alford Plea.

J.M. argues that his Washington convictions should not be recognized in New Jersey because they were based on an Alford plea and New Jersey does not allow Alford pleas.  J.M. also argues that according comity to the two convictions resulting from an Alford plea would threaten the integrity of New Jersey's criminal justice system.

As already noted, Washington allows Alford pleas.  See CrR 4.2(d) (outlining the requirements and nature of pleas in Washington); Cross, 178 Wash. 2d at 525-26; State v. Newton, 87 Wash. 2d 363, 372 (Wash. 1976); State

v. Hubbard, 106 Wash. App. 149, 151 (Wash. Ct. App. 2001). Washington also treats Alford pleas as convictions. See Cross, 178 Wash. 2d at 525-26; State v. Manajares, 197 Wash. App. 798, 806-07 (Wash. Ct. App. 2017) (analyzing the criminal conviction arising from the defendant's Alford plea); In re Spencer, 152 Wash. App. 698, 700-01 (Wash. Ct. App. 2009) (noting that the defendant was required to register as a sex offender after his conviction following an Alford plea). Washington courts have explained that Alford pleas are acceptable and enforceable for purposes of a criminal conviction so long as the plea is voluntary and knowing and there is a factual basis for the plea. Cross, 178 Wash. 2d at 525-26.

J.M. points out that New Jersey does not accept Alford pleas. That is correct. See State v. Urbina, 221 N.J. 509, 526-27 (2015) (noting that courts in New Jersey do not accept Alford pleas, which is a departure from the federal rule). The question before us, however, is not whether New Jersey would accept an Alford plea; rather, the issue is whether New Jersey recognizes a conviction of a sexual offense from another state. We hold that so long as the out-of-state conviction is recognized in the state that imposed the conviction, that conviction may be used for Megan's Law purposes in New Jersey. See N.J.S.A. 2C:7-2(b)(3).

There is no dispute that J.M. was convicted of a sexual offense in Washington. The Washington court accepted J.M.'s pleas, consistent with Washington law, and imposed convictions and a sentence. J.M. is not challenging his Washington convictions or sentence.

Megan's Law directs New Jersey courts to require registration of a sex offender convicted of a qualifying sex offense in another state. See N.J.S.A. 2C:7-2(a)(1), (b)(3). Accordingly, an application of the plain language of Megan's Law requires that J.M.'s Washington convictions be recognized in New Jersey.

Moreover, well-established principles of comity also support recognizing J.M.'s Washington convictions. "Comity is the basis for voluntary enforcement or recognition by one state of the judicial proceedings of a sister state." Aly v. E.S. Sutton Realty, 360 N.J. Super. 214, 222 (App. Div. 2003) (quoting City of Phila. v. Austin, 86 N.J. 55, 63-64 (1981)). While comity "is not a binding obligation on the forum state," it generally is "extended . . . for reasons of 'practice, convenience and expediency.'" Ibid. (quoting Mast, Foos & Co. v. Stover Mfg. Co., 177 U.S. 485, 488 (1900)). "Thus, application of comity involves an examination by the court of both the public policy of the forum state

and the impact on that policy of enforcing the order issued in the foreign proceeding." Ibid.

Federal courts and forty-seven states allow Alford pleas. See Alford, 400 U.S. at 37-38 (recognizing the validity of Alford pleas); Urbina, 221 N.J. at 527 (noting that federal courts accept Alford pleas, but that state courts in New Jersey do not). Not to accept convictions of sexual offenses based on Alford pleas would be inconsistent with New Jersey's clear public policy of requiring sex offenders to register in New Jersey if they live in this state. See Doe v. Poritz, 142 N.J. 1, 88-89 (1995) (highlighting that Megan's Law aims to limit recidivism posed by sex offenders and to protect the public from those offenders); N.J.S.A. 2C:7-1.

We reject J.M.'s arguments concerning the integrity of the criminal justice system and the public policy of New Jersey. J.M. knowingly and voluntarily entered guilty pleas to sexual offenses in Washington. A Washington court expressly found that J.M. was guilty of those charges. According comity to the Washington convictions does not threaten the integrity of New Jersey's judicial system. Nor does according comity to those convictions undercut New Jersey's public policy. To the contrary, not acknowledging the convictions would mean that New Jersey would not require sex offenders who have been convicted in

12

another state following the entry of an Alford plea to register after moving to New Jersey.

We also reject J.M.'s argument that accepting his Washington convictions would be inconsistent with the holding in State v. Taccetta, 200 N.J. 183, 198 (2009). In Taccetta, the New Jersey Supreme Court held that a defendant will not be allowed to provide false testimony to support a guilty plea to a crime. Id. at 198 (requiring a defendant to give "a truthful account of what actually occurred"). J.M. did not falsely testify when he pled guilty in Washington. Instead, he maintained his innocence but also acknowledged that a jury would likely find him guilty, that he was accepting punishment, and that he was making his plea voluntarily and knowingly. Consequently, in recognizing J.M.'s Washington convictions, New Jersey is not accepting a plea based on false testimony; rather, it is acknowledging pleas and convictions given in accordance with Washington law.

Finally, we also reject J.M.'s arguments that Washington considers Alford pleas coerced pleas. Some Washington courts have determined that, under particular facts of those cases, an Alford plea should not have certain collateral effects or should not be enforced if it was not supported by a proper factual foundation. See Clark v. Baines, 150 Wash. 2d 905, 914-15 (Wash. 2004)

A-3020-23

(holding that collateral estoppel cannot apply to a defendant's claim, because a defendant who pleads guilty under an Alford plea "has not had a full and fair opportunity to litigate the issues"); Sluman v. State, 3 Wash. App. 656, 696 (Wash. Ct. App. 2018). The Washington Supreme Court, however, has clarified that a proper Alford plea, which is voluntarily given and based on facts, is an enforceable conviction. See Cross, 178 Wash. 2d at 525-26; Newton, 87 Wash. 2d at 369-70; see also State v. Zhao, 157 Wash. 2d 188, 199-200 (Wash. 2006) (holding that a defendant can submit an Alford plea as to an amended charge, so long as "the record establishes that the defendant did so knowingly and voluntarily and that there at least exists a factual basis for the original charge").

In summary, J.M. was lawfully convicted of two counts of a sex offense in Washington. Those convictions are for an offense that is similar to a New Jersey sexual offense that would require registration under Megan's Law. Both Megan's Law and the public policy of New Jersey require and support recognizing J.M.'s Washington convictions. Megan's Law, therefore, requires J.M. to register as a sex offender in New Jersey. N.J.S.A. 2C:7-2(b)(3).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3020-23