
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| STATE OF WASHINGTON, | ) | No. 76747-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JUSTIN PHILLIP DAVIS, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 31, 2017 |

SCHINDLER, J. — The State charged Justin Phillip Davis with drive-by shooting, three counts of assault in the first degree while armed with a firearm, unlawful possession of a firearm in the first degree, and witness tampering. After several days of trial testimony, Davis pleaded guilty to drive-by shooting and unlawful possession of a firearm in the first degree. For the first time on appeal, Davis argues the court did not have an adequate factual basis to accept his plea to the crime of drive-by shooting. Davis also challenges calculation of his offender score, the conditions of community custody, and imposition of the mandatory criminal filing fee. We affirm.

## FACTS

On May 22, 2015, the State charged Justin Phillip Davis with drive-by shooting in violation of RCW 9A.36.045(1), three counts of assault in the first degree while armed with a firearm in violation of RCW 9A.36.011(1)(a), unlawful possession of a firearm in

the first degree in violation of RCW 9.41.040(1)(a), and tampering with a witness in violation of RCW 9A.72.120(1)(a). Davis entered a plea of not guilty.

Before trial, the court found Davis knowingly, intelligently, and voluntarily waived his right to counsel and granted his request to represent himself. The court appointed standby counsel to assist Davis.

The jury trial began on June 11, 2015. The State called a number of witnesses to testify, including Davis's girlfriend Angela Radford, Radford's 18-year-old son Leilua Samaga, police officers, a Tacoma Police Department forensic specialist, a Tacoma Police Department latent finger print examiner, and a Washington State Patrol Crime Laboratory (WSPCL) forensic scientist.

Radford testified that between 1:00 a.m. and 4:00 a.m. on November 17, 2014, Davis left her apartment in a white Toyota car "to go make a sale" at a hotel in Tacoma. Radford said Davis called her a short time later "to come get him" because he "just got robbed" and the robbers had taken his car keys. Radford drove to pick up Davis in her silver Dodge Avenger and returned to her apartment. Radford testified that the next morning at approximately 9:00 a.m., she, Davis, and Samaga drove back to the hotel. Radford said she drove her Dodge Avenger, Davis was in the front passenger seat, and Samaga was in the back seat. Radford stated that when they got to the hotel, they saw three individuals getting into Davis's Toyota. Radford said Davis told her to follow the Toyota. Radford testified that after following the Toyota for 5 or 10 minutes, Davis "pulled out a gun and started shooting at them."

Q    As you were following the vehicle, what happened?
A    . . . We continued to follow them, and we turned down, I believe 82nd Street, and then [Davis] pulled out a gun and started shooting at them.

2

. . . .

Q    What did you see Mr. Davis doing?  Describe to the jury what he was doing.

A    Shooting at the car.

Radford testified Davis fired "a lot" of shots at the Toyota.

Samaga testified there were three people inside the Toyota.  Samaga said that Davis rolled down the front passenger-side window and "started shooting" at the Toyota.

Q    Now, as you were following the vehicle, what happened?

A    We followed the car.

Q    What happened after you followed the car?

A    [Davis] started shooting. . . .

Q    . . . Could you repeat what you said?

A    He turned down the hand window, and we were riding, following his car, and then he started shooting towards his car.

Q    You just said a lot of stuff, you indicated that he rolled down the window?

A    Yeah.

Tacoma Police Officer Jared Williams testified that during a search of the Dodge Avenger, he found a loaded .40 caliber Glock pistol, a loaded .380 caliber Davis Industries pistol, and a spare magazine for the Glock pistol in the trunk.  Officer Jason Mills testified there were "bullet strikes" on the Toyota Camry.

Tacoma Police Department Forensic Specialist Donovan Valez recovered 11 spent shell casings and two "bullet fragments" from the street where the shooting occurred.  Valez testified he found a latent fingerprint impression on one of the .40 caliber cartridges in the spare magazine found in the trunk of the Dodge.  Tacoma Police Department Latent Fingerprint Examiner Toni Martin testified that the fingerprint found on the .40 caliber cartridge matched Davis's right thumb.

WSPCL Supervising Forensic Scientist Terry Franklin testified he examined the 11 spent shell casings recovered by the police.  Franklin testified that the shell casings

3

were fired from the .40 caliber Glock the police found in the trunk of the Dodge.

On June 17, the State filed an amended information. Davis agreed to plead guilty to drive-by shooting and unlawful possession of a firearm in the first degree as charged in the amended information.

In the "Statement of Defendant on Plea of Guilty to Non-Sex Offense," Davis describes in his "own words" why he is guilty of the charged crimes.

> The judge has asked me to state what I did in my own words that makes me guilty of this crime.
> This is my statement: On Nov[ember] 17, 2014 I fired a gun from a moving vehicle creating a substantial risk of death or serious physical injury to individuals in and around the immediate area of the motor vehicle. I was a passenger at the time. I also have a previous conviction for a serious offense and am prohibited from owning or possessing a firearm. All this took place in Pierce Co[unty,] WA.

Davis also entered into a "Stipulation on Prior Record and Offender Score." Davis stipulated that he had an offender score of 7 for both counts.

At the hearing on the guilty plea, the trial court conducted an extensive colloquy on entry of the guilty plea. The court specifically asked Davis about his statement that he was guilty of the crime of drive-by shooting and unlawful possession of a firearm.

> Q     ... It says here in paragraph 11 that: On November 17th, 2014, I fired a gun from a moving vehicle creating a substantial risk of death or serious physical injury to individuals in and around the immediate area of the motor vehicle. I was a passenger at the time. I also have a previous conviction for a serious offense and am prohibited from owning or possessing a firearm. All this took place in Pierce County, Washington.
>      Mr. Davis, is that a correct statement?
> A     Yes, sir.
> Q     Is that what happened?
> A     Similar.
> Q     Say again?
> A     It was similar.
> Q     Sir, let me ask you this, did you fire a gun from a moving vehicle?
> A     Yes, sir.

Q      Had you had a previous conviction for what is defined as a serious
        offense under the statute?
A      Yes, sir.

The court found Davis knowingly, intelligently, and voluntarily entered into the

Statement of Defendant on Plea of Guilty and was guilty as charged.

> I'm going to find that Mr. Davis's plea is knowingly, intelligently, and
> voluntarily rendered, and, accordingly, I'm going to accept his plea, find
> him guilty of those two offenses that are contained in the Second
> Amended Information.

At the June 24 sentencing hearing, Davis filed a motion to withdraw his guilty

plea. In his affidavit, Davis states, "The defendant should be permitted to withdraw his

guilty plea since there existed only an ambiguous expression of qualified guilt coupled

with as [sic] statement of facts." The court denied the motion to with draw the guilty

plea.

> [T]he Court . . . engaged in what I believe to be was a thorough
> providency [sic] inquiry with Mr. Davis to ensure that he understood the
> nature and the consequences of the rights he was relinquishing by
> entering into this plea. And the Court was satisfied, I think the Court
> continues to be satisfied, that Mr. Davis's entry of a guilty plea was
> knowingly, intelligently, and voluntarily rendered. Therefore, the court
> respectfully denies his motion to withdraw his guilty plea.

The court sentenced Davis to 70 months of confinement. The court waived

imposition of all discretionary fees and costs. The court ordered Davis to pay the

mandatory victim penalty assessment, DNA[1] database fee, and criminal filing fee.

ANALYSIS

Motion to Withdraw Guilty Plea

Davis argues the court erred in denying his motion to withdraw his guilty plea.

For the first time on appeal, Davis claims the court violated CrR 4.2(d) by entering

---

[1] Deoxyribonucleic acid.

5

judgment on his guilty plea to the drive-by shooting charge without an adequate factual basis for the plea.[2]

CrR 4.2(d) states:

The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

As a general rule, we do not consider issues raised for the first time on appeal unless the alleged error is a manifest constitutional error. RAP 2.5(a)(3); State v. Gentry, 183 Wn.2d 749, 760, 356 P.3d 714 (2015); State v. Kalebaugh, 183 Wn.2d 578, 583, 355 P.3d 253 (2015); State v. Arredondo, 188 Wn.2d 244, 262-63, 394 P.3d 348 (2017). It is the appellant's burden to show that the alleged error was both "truly of constitutional dimension" and "manifest." State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009); State v. Hart, 195 Wn. App. 449, 460, 381 P.3d 142 (2016).

Although CrR 4.2(d) requires a trial court to be "satisfied that there is a factual basis for the plea," this requirement is procedural and not constitutionally required. State v. Branch, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996); State v. Bird, 187 Wn. App. 942, 945, 352 P.3d 215 (2015); In re Pers. Restraint of Hews, 108 Wn.2d 579, 591-92, 741 P.2d 983 (1987); In re Pers. Restraint of Hilyard, 39 Wn. App. 723, 727, 695 P.2d 596 (1985). Because Davis did not challenge the factual basis of the plea under CrR 4.2(d) below and does not argue his plea was not voluntary, intelligent, and knowing, we decline to consider the argument for the first time on appeal.

---

[2] Davis does not challenge his guilty plea to the charge of unlawful possession of a firearm in the first degree.

Nonetheless, we note the Statement of Defendant on Plea of Guilty as well as the testimony at trial clearly established a factual basis for the guilty plea to drive-by shooting.[3] A factual basis for a plea exists if there is evidence "sufficient for a jury to conclude the defendant is guilty." In re Pers. Restraint of Cross, 178 Wn.2d 519, 526, 309 P.3d 1186 (2013); State v. Easterlin, 159 Wn.2d 203, 210, 149 P.3d 366 (2006); State v. Zhao, 157 Wn.2d 188, 198, 137 P.3d 835 (2006). The trial court may look to "any reliable source" to determine that there is a factual basis for a guilty plea. Cross, 178 Wn.2d at 526; State v. Codiga, 162 Wn.2d 912, 924, 175 P.3d 1082 (2008); Zhao, 157 Wn.2d at 198.

Offender Score

Davis claims the court erred by including a 2007 Louisiana "simple burglary" conviction in his offender score. Davis asserts the crime is not comparable to a Washington offense. But the Louisiana burglary conviction was not included in Davis's offender score. Although Davis's criminal history lists the 2007 Louisiana simple burglary conviction, the Stipulation on Prior Record and Offender Score shows Davis's offender score does not include any points for the Louisiana conviction.[4] The "[s]core by [count]" assigned to Davis's 2007 Louisiana simple burglary conviction appears as "n/a[5]."

---

[3] Under RCW 9A.36.045(1), a person is guilty of the crime of drive-by shooting when he "recklessly discharges a firearm . . . in a manner which creates a substantial risk of death or serious physical injury to another person and the discharge is . . . from a motor vehicle."

> A person who unlawfully discharges a firearm from a moving motor vehicle may be inferred to have engaged in reckless conduct, unless the discharge is shown by evidence satisfactory to the trier of fact to have been made without such recklessness.

RCW 9A.36.045(2).

[4] Davis also stipulated that his "criminal history and scoring are correct, producing an offender score" of 7.

[5] Not applicable.

Community Custody Conditions

Davis challenges the following community custody conditions as unconstitutionally vague:

> [x] remain [ ] within [ ] outside of a specified geographic boundary, to wit: per CCO[6]
>
> . . . .
>
> [x] participate in the following crime-related treatment or counseling services: per CCO
>
> . . . .
>
> [x] comply with the following crime-related prohibitions: per CCO.

"[V]agueness challenges to conditions of community custody may be raised for the first time on appeal." State v. Bahl, 164 Wn.2d 739, 745, 193 P.3d 678 (2008). We review the imposition of community custody conditions for manifest abuse of discretion. Bahl, 164 Wn.2d at 753; State v. Valencia, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010). A sentencing condition is unconstitutionally vague if

> it "(1) . . . does not define the [prohibited conduct] with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) . . . does not provide ascertainable standards of guilt to protect against arbitrary enforcement."

Bahl, 164 Wn.2d at 752-53[7] (quoting City of Spokane v. Douglass, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)). When determining whether a sentencing condition is unconstitutionally vague, the "terms are not considered in a 'vacuum,' rather, they are considered in the context in which they are used." Bahl, 164 Wn.2d at 754 (quoting Douglass, 115 Wn.2d at 180).

The community custody conditions that Davis challenges are not unconstitutionally vague.

---

[6] Community corrections officer.

[7] Ellipses in original.

Under RCW 9.94A.703(1)(b), the trial court shall order an offender to comply with conditions imposed by the Department of Corrections (DOC) under RCW 9.94A.704. RCW 9.94A.703 states, in pertinent part:

> (1) **Mandatory conditions.** As part of any term of community custody, the court shall:
>
> . . . .
>
> (b) Require the offender to comply with any conditions imposed by the department [(DOC)] under RCW 9.94A.704.

RCW 9.94A.704(1) states every offender "sentenced to a period of community custody shall report to and be placed under the supervision of the department." RCW 9.94A.704(2) requires DOC to assess the risk of reoffense and "establish and modify additional conditions of community custody based upon the risk to community safety." RCW 9.94A.704(2)(a). RCW 9.94A.704(2) states:

> (a) The department shall assess the offender's risk of reoffense and may establish and modify additional conditions of community custody based upon the risk to community safety.
>
> (b) Within the funds available for community custody, the department shall determine conditions on the basis of risk to community safety, and shall supervise offenders during community custody on the basis of risk to community safety and conditions imposed by the court. The secretary shall adopt rules to implement the provisions of this subsection (2)(b).

RCW 9.94A.704(3) requires DOC "at a minimum" to "instruct the offender to . . . [r]emain within prescribed geographical boundaries." RCW 9.94A.704(3)(b). RCW 9.94A.704(3) states:

> If the offender is supervised by the department, the department shall at a minimum instruct the offender to:
> (a) Report as directed to a community corrections officer;
> (b) Remain within prescribed geographical boundaries;
> (c) Notify the community corrections officer of any change in the offender's address or employment;
> (d) Pay the supervision fee assessment; and
> (e) Disclose the fact of supervision to any mental health or

chemical dependency treatment provider, as required by RCW 9.94A.722. RCW 9.94A.704(4) authorizes DOC to "require the offender to participate in rehabilitative programs, or otherwise perform affirmative conduct, and to obey all laws."

The trial court did not abuse its discretion in ordering Davis to comply with the statutory community custody conditions that are authorized under RCW 9.94A.704.

Legal Financial Obligations

Davis challenges imposition of the mandatory $200 criminal filing fee. Davis argues the court did not conduct an individualized inquiry into his ability to pay the fee. But the criminal filing fee is statutorily mandated under RCW 36.18.020(2)(h) and must be imposed regardless of the defendant's ability to pay. State v. Lundy, 176 Wn. App. 96, 102-03, 308 P.3d 755 (2013); State v. Gonzales, 198 Wn. App. 151, 155, 392 P.3d 1158 (2017); State v. Stoddard, 192 Wn. App. 222, 225, 366 P.3d 474 (2016).

Statement of Additional Grounds

In his pro se statement of additional grounds, Davis appears to argue the court erred in denying his motion to withdraw his guilty plea based on its finding that his guilty plea was knowing, voluntary, and intelligent.

Whether Davis's plea of guilty was voluntary and intelligent "is a question of fact 'peculiarly within the province of the trial court.' " State v. Davis, 125 Wn. App. 59, 68, 104 P.3d 11 (2004) (quoting State v. McLaughlin, 59 Wn.2d 865, 870, 371 P.2d 55 (1962)). We will not overturn the trial court's finding unless it is "manifestly erroneous." McLaughlin, 59 Wn.2d at 870. "A defendant's signature on a plea statement is strong evidence of a plea's voluntariness." In re Det. of Scott, 150 Wn. App. 414, 427, 208 P.3d 1211 (2009); Branch, 129 Wn.2d at 642. When the court " 'inquire[s] orally of the

defendant and satisfies [itself] on the record of the existence of the various criteria of voluntariness, the presumption of voluntariness is well nigh irrefutable.' " Scott, 150 Wn. App. at 427[8] (quoting Branch, 129 Wn.2d at 642 n.2).

The record supports the court's finding that Davis's guilty plea was knowing, voluntary, and intelligent. Davis's signed Statement of Defendant on Plea of Guilty states, "I make this plea freely and voluntarily" and "[n]o one has threatened harm of any kind to me or to any other person to cause me to make this plea." The court also asked Davis whether his plea was voluntary.

Q    Has anybody made any threats to you to harm you to make this plea?
A    No, sir, your Honor.
Q    Do you feel as if you're doing so voluntarily?
A    Yes, sir.
Q    I'm satisfied this plea is knowingly, intelligently, and voluntarily rendered.

For the first time on appeal, Davis claims the court erred in calculating his offender score by not finding that his September 2011 convictions for unlawful possession of a controlled substance with intent to deliver and unlawful possession of a controlled substance (MDMA[9]) constituted the same criminal conduct. Because Davis did not argue at sentencing that these offenses constitute the same criminal conduct, Davis waived this argument and cannot raise it for the first time on appeal. State v. Brown, 159 Wn. App. 1, 16-17, 248 P.3d 518 (2010); State v. Jackson, 150 Wn. App. 877, 892, 209 P.3d 553 (2009); In re Pers. Restraint of Shale, 160 Wn.2d 489, 496, 158 P.3d 588 (2007).

---

[8] Internal quotation marks omitted.
[9] Methylenedioxymethamphetamine, also known as "Ecstasy."

Appellate Costs

Davis asks us to deny appellate costs. Appellate costs are generally awarded to the substantially prevailing party on review. RAP 14.2. Where, as here, a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2. Under RAP 14.2, if the State has evidence indicating that Davis's financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner. State v. St. Clare, 198 Wn. App. 371, 382, 393 P.3d 836 (2017).

We affirm.

WE CONCUR:

Trickey, ACJ

Cox, J.